(No. 6044.   May 19, 1934.)

STATE, Respondent, v. EDWARD ALLEN, Appellant.

[34 Pac. (2d) 45.]

Samuel Adelstein, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

BUDGE, C. J.—Appellant was charged with first degree murder, was tried, and convicted of second degree mur-

der. This appeal is from the judgment and from an order overruling a motion for new trial.

There is, throughout, a conflict in the testimony. Briefly stated, the material facts are that appellant and deceased were, and had been for several years, roomers at the residence of Gertrude McCaleb in the city of Pocatello. On the afternoon of January 1, 1933, at the McCaleb residence, appellant and the deceased engaged in an argument. It appears that appellant had been at the home of Mrs. Brooks for the purpose of inducing Gertrude McCaleb to return to the latter's home. In this he was not successful, whereupon, against the protest of the McCaleb woman, he possessed himself of the latter's hat and coat and carried them to the McCaleb residence. Either appellant or deceased left the McCaleb house with Mrs. McCaleb's hat and coat, with the intention of returning them to the Brooks home, and was followed by the other. According to the state's witness, when the deceased started out of the door of the McCaleb residence with the coat and hat appellant asked him where he was going, whereupon deceased answered "none of your business." Thereupon, appellant said: "bring that coat and hat back here, if you don't I will kill you." Immediately thereafter appellant and deceased engaged in a struggle or fight in front of the McCaleb residence, both combatants falling to the ground, appellant being on top. While in this position, or immediately thereafter, appellant drew an automatic pistol and started to run away from the deceased. The deceased followed him, and after appellant had run a short distance he turned and fired four shots as he moved backward and away from the deceased. Three shots entered the body of the deceased, he fell to the ground, and nine days later died from the effect of the wounds inflicted.

Appellant specifies and relies upon the following assignments of error for a reversal of the judgment: First, that the court misdirected the jury in matters of law, namely: In giving an instruction referred to as number twenty-one; second, that the court erred in the decision of questions of law arising during the course of the trial; third, that the

verdict of the jury is contrary to the law; and, fourth, that the verdict of the jury is contrary to and unsupported by the evidence.

■■ Instruction number twenty-one reads as follows:

"You are instructed gentlemen of the jury that section 19–2012 Idaho Code Annotated, reads as follows:

" 'Murder: Burden of proof in mitigation. Upon a trial for murder the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.'

"The above section casts upon the defendant the burden of proving circumstances of mitigation or that justify or excuse the commission of the homicide, unless the evidence of the prosecution tends to prove such circumstances. This does not mean that he must prove such circumstances by a preponderance of the evidence, but that the presumption that the killing was felonious arises from the mere proof by the prosecution of the homicide, and the burden of proving the circumstances of mitigation, justification or excuse is thereby cast upon him. He is only bound under this rule to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged. It can make no difference whether this reasonable doubt is a result of evidence on the part of the defendant tending to show circumstances of mitigation or that justify or excuse the killing, or from other evidence coming from him or the prosecution."

It is contended by appellant that the trial judge committed prejudicial error in that he substituted the words "tends to prove" in lieu of the words "tends to show," as used in I. C. A., section 19–2012, in that the words "tends to show" "requires a greatly lesser degree of proof, and in this case, places upon the defendant the burden of proving mitigating circumstances and even his innocence." With this contention we are not in accord. The word "show" as used in I. C. A., section 19–2012, is equivalent to the word "prove."

The words are synonymous and are used interchangeably, and have been so used in this jurisdiction. (*Carter v. Watson,* 52 Ida. 805; *State v. Lundhigh,* 30 Ida. 365, 164 Pac. 690; *State v. Rogers,* 30 Ida. 259, 163 Pac. 912; *State v. Wilson,* 41 Ida. 616, 243 Pac. 359; *State v. Copenbarger,* 52 Ida. 441, 16 Pac. (2d) 383; *State v. Jurko,* 42 Ida. 319, 245 Pac. 685; 58 C. J. 703; Black's Law Dictionary, 3d ed., 1624.)

It is appellant's contention that in instruction number twenty-one the court instructed the jury that the homicide being proved, the presumption that the killing was felonious arises from the mere proof by the prosecution of the homicide and that the burden of proving the circumstances of mitigation, justification or excuse is thereby cast upon him, and, that this would only be true provided the evidence produced by the prosecution was devoid of evidence tending to show that the crime committed only amounts to manslaughter or that appellant's act was justifiable or excusable. It was for the jury to determine whether the evidence on behalf of the prosecution tended to show circumstances of mitigation, excuse or justification, and if they found that there was mitigating circumstances, justification or excuse for the killing no presumption that the killing was felonious arose, and the burden was then upon the prosecution to prove the element of malice. While, on the other hand, if the jury found from the evidence on behalf of the prosecution that there was no evidence therein tending to show circumstances of mitigation, or that justified or excused the homicide, the jury could then indulge the presumption that the killing was felonious, and the burden would rest upon the appellant to produce such evidence as would create in the minds of the jury a reasonable doubt of his guilt of the offense charged. He should not be required to prove such circumstances of mitigation, justification or excuse by a preponderance of the evidence, but it is sufficient if he produce such evidence as to create in the minds of the jury a reasonable doubt of his guilt. In the course of the opinion

in *State v. Copenbarger, supra,* the following rule is announced:

" . . . . where the evidence or admission which establishes the fact of the killing contains also circumstances of the character just indicated (circumstances of necessity, excuse or mitigation) it would· be within the province of the jury to accept the entire testimony, and give full effect to the circumstances reducing the killing from murder to some other lower grade of offense than murder, or to find it justifiable homicide, or they might reject entirely all of the evidence of an exculpatory nature, if under all the proved facts and circumstances they disbelieved the same, and believe only that which tended to fix guilt upon the accused; . . . .

"We do not mean to say that, under the circumstances, the jury is required to believe the exculpatory matter contained in defendant's admissions. The only effect of the rule is to deprive the state of the benefit of the presumption of malice, and to require it to disprove the exculpatory matter introduced by it. Obviously, if the state itself proves self-defense without contradiction, no conviction could be had. When, however, the state does introduce evidence which contradicts the exculpatory evidence contained in the admissions of the defendant, the jury must pass upon the conflicting evidence and resolve it in favor of the state or of the defendant, in accord with the rules as properly stated by the trial court."

The evidence discloses that appellant was the aggressor, that he armed himself, unbeknown to the deceased, that the deceased was unarmed, that appellant during the fight, which was a continuous struggle according to appellant's evidence, at all times had the advantage of the deceased. There is evidence that appellant stated "That he could handle him easy enough (referring to the deceased) without shooting him, that he rubbed his nose in the snow or on the sidewalk in the snow several times, that he was easy enough to handle." In the instant case if it can be said that there was exculpatory evidence or matters that found their way into

the trial in the evidence on behalf of the prosecution, there is likewise evidence which contradicts any such exculpatory evidence, and we think the question was properly presented to the jury by the instruction given, the court instructing upon the crime of homicide and offenses included therein. While the instruction complained of was not a model, when read in connection with all of the other instructions given, and in the light of all of the testimony adduced upon the trial, we are not of the opinion that the jury were misled. Applying the instruction complained of to the evidence we are not prepared to say that the instruction was prejudicially erroneous.

Coming now to the second assignment of error, that the court erred in the decision of questions of law arising during the course of the trial, we assume that this assignment of error is directed to, or has reference to, the cross-examination of the appellant as to certain statements inconsistent with his testimony given upon the trial, which was for the purpose of impeachment. We have examined the testimony and find no error in the rulings of the court. The questions asked conformed to the requirements of, and were within the provisions of, I. C. A., section 16–1210. As we said in *State v. Brassfield*, 40 Ida. 203, 232 Pac. 1.

"While it must be conceded that the requirements of C. S., sec. 8039 (I. C. A., sec. 16–1210) must be complied with before an impeaching question can be put to a witness, this statute must not be given such an unreasonable construction as to devitalize it."

It is further contended under the above assignment of error that the state examined the appellant as to statements made to three witnesses while he was in the county jail but that only two of these witnesses were called by the state. It is insisted that the failure of the state to call the third witness to whom statements were alleged to have been made was prejudicial error. There is no merit in this contention. The state is not required to call all impeaching witnesses whose names are indorsed upon the information. (*State v. Rice*, 7 Ida. 762, 66 Pac. 87; *Ross v. State*, 8 Wyo. 351, 57 Pac. 924; *State v. Smith*, 78 Minn. 362, 81 N. W. 17;

*Rex v. Simmonds,* 1 Car. & P. 84; *Rex v. Whitbread,* 1 Car. & P. 84 and note; *Morrow v. State,* 57 Miss. 836; *State v. Milosovich,* 42 Nev. 263, 175 Pac. 139; *Abrams v. State,* 49 Okl. Cr. 376, 293 Pac. 1116; *State v. Martin,* 24 N. C. 101; *State v. Smallwood,* 75 N. C. 104; *State v. Eaton,* 75 Mo. 586; *Winsett v. State,* 57 Ind. 26.)

Appellant further objected to the introduction of certain clothing of the deceased upon the ground that it was not sufficiently identified, and further, that the exhibits were not shown to be in substantially the same condition that they were when witnesses testified they last saw them. We are unable to agree with appellant's contention in this regard, since the evidence amply establishes sufficient identification of the articles of clothing taken from the body of the deceased and that they were in substantially the same condition when offered in evidence upon the trial as when removed from the deceased.

It is next contended that the verdict of the jury was contrary to law. In our discussion of assignment of error number one we think we have sufficiently disposed of this assignment.

With relation to assignment of error number four, namely, that the verdict of the jury is contrary to and unsupported by the evidence, without going into the evidence in detail, we are satisfied that there was sufficient competent evidence to uphold the verdict.

From what has been said it must follow that the judgment be affirmed and it is so ordered.

Givens, Morgan, Holden and Wernette, JJ., concur.