(No. 6776. November 6, 1940.)

STATE, Respondent, v. J. BRITT HARGRAVES, Appellant.

[107 Pac. (2d) 854.]

Rehearing denied December 11, 1940.

Black & Black and Merrill & Merrill, for Appellant.

J. W. Taylor, Attorney General, and R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

BUDGE, J.—Appellant was convicted of first degree murder and sentenced to life imprisonment. From an order denying motion for new trial and from the judgment this appeal is prosecuted.

The record discloses substantially the following: About 2:30 P. M. July 12, 1939, appellant shot and killed one F. F. Hunter, village marshal of Alameda. Appellant and his wife came from Salt Lake City shortly before July 4, 1939, to spend the 4th at Pocatello and vicinity. July 10th appellant's wife left the home of appellant's parents in Pocatello and went to her parents' (Bailey) home in Alameda. Early in the afternoon of July 12th appellant called the Bailey home by telephone and asked to speak to his wife. Harold Bailey, appellant's brother-in-law, answered the telephone and refused to call his sister, appellant's wife, to the telephone whereupon appellant stated among other things: ''I have got a gun, and I mean business, and I will come and rub you all out.'' After this conversation appellant's wife called the sheriff's office and the police station. The deceased, Hunter, who was and had been village marshal of the village of Alameda for some five or six years, accompanied by one Bistline, arrived at the Bailey home in response to the above-mentioned telephone call and Hunter went into the house. While Hunter was in the house appellant drove up in his car, stopped, blew his horn and then drove on up the street. Hunter came out of the house and got into the Bistline car and appellant about this time returned and parked his car on the side of the street opposite from the Bistline car. Hunter got out of the Bistline car and started across the street toward appellant's car and reached about the middle of the street when appellant stated to deceased: ''Hunter, stay out of this. You got nothing to do with it; and if you interfere I will kill you.'' As deceased reached the side of appellant's car, appellant pointed a pistol he had in his hands toward the Bailey home. Deceased sought to disarm appellant, appellant again pointed the pistol toward the Bailey house and deceased grabbed appellant's wrists with both hands, appellant pulled back and deceased's head and shoulders passed into the car through the open window and immediately thereafter appellant's gun was discharged into the body of deceased mortally wounding him, the deceased backing out taking one or two steps and falling to the ground in front of appellant's car. During the above time Bistline got out of his car and started toward appellant's car, where-

upon appellant fired three shots at Bistline, two of which struck him in the body whereupon he fell to the ground in the borrow pit. Immediately thereafter Harold Bailey, appellant's brother-in-law, who had been standing in the doorway of the Bailey home while the above recited events were occurring, and armed with a .38 automatic pistol, reached the north end of appellant's car and fired two shots, one through the open window on the west side and one in the back panel of appellant's car, after which appellant jumped out of the car and ran across the street and through a vacant lot. Other shots were thereafter exchanged by Harold Bailey and appellant without effect. Appellant then continued through the vacant lot, boarded a bus and rode to the Busy Bee grocery from where he telephoned the Bailey home. In the course of this conversation he made the statement to Harold Bailey: "I have got to speak to Gertrude" (appellant's wife) "put her on the phone or I will be back with a machine gun and get the rest of you." Immediately following this conversation appellant proceeded to the home of one Dods where he remained until about 5 P. M. then left and proceeded a short distance to the campus of the University of Idaho, Southern Branch. Shortly before 9 o'clock Officers Nelson and Evans located appellant on the top floor of Gravely Hall, a building in process of construction on the campus, appellant shot both of the officers, one in the left arm and one in the right hand, appellant was wounded and he then surrendered his gun and submitted to arrest.

There is evidence in the record to the effect that appellant fired two shots into the body of deceased; that appellant said to Hunter: "Stand back, or I'll let you have it. I am out here on business, and I've got a hundred shells for this gun." There is evidence that appellant called the deceased by name when he warned him "you stay out of this, I have a hundred shells for this gun." Appellant admitted he was in business in the village of Alameda at a time when deceased was village marshal, but denied that he knew deceased. Appellant likewise denied that he said to Hunter: "Stay out of this, if you interfere I will kill you."; denied that he had the conversation with Harold Bailey prior to going to the Bailey home and denied that he stated to Harold Bailey over the

telephone from the Busy Bee grocery: "I will be back with a machine gun and get the rest of you." Appellant also denied that he pointed the gun at George Bailey and denied that he fired at Officers Nelson and Evans before they fired at him in Gravely Hall.

We have examined with care all of the assignments of error, as well as the entire record, and have concluded to discuss only such assignments as we deem to present questions decisive of this appeal.

Appellant earnestly and most seriously contends that reversible error was committed when the state was allowed on cross-examination of appellant to elicit evidence showing or tending to show that trouble existed and had existed for some considerable period of time between appellant, his wife and members of the Bailey family. On direct examination appellant testified, among other things, as follows:

"and there was nothing said until he got about the middle of the street and he (Mr. Hunter) said, 'What's the matter?' and proceeded over to the car. And I said, 'Mr. Bailey has a gun, and it looks like he might want to take a shot at me.' And I said, 'I guess I'll just show him I have got a gun, too.' And I took my gun out of the holster and laid it on the window sill. And he walked on up to my car and asked me what the trouble was again. I said, 'I don't know of any trouble. I just came to get Gertrude and the children to go back to Salt Lake, and now I see it looks like he won't let her come out, and he has got a gun up there now. I cannot imagine what all the trouble is.' I said, 'I'll just let them see that I still have got a gun.' And he walked on over to the left side of my car, and said, 'You don't need a gun,' and pushed it aside. So I put it down in my lap. And he walked across by the door and turned with his back to the north and was leaning on the window of the car, talking to me and asking me what the trouble was. And I says, *'I haven't had any trouble.'*" (Emphasis ours.)

On cross-examination appellant testified that two days before the homicide, he was up in the hills, that he was with his sister-in-law, Gladys, his wife's sister. He further testified he had had no trouble with his wife by reason of his association with Gladys. Later he testified that he had had

no trouble with his wife but modified his testimony by stating: "Well, not at that time; no." The following questions were then propounded to him and he answered as follows:

"Q. You hadn't had any up to that time?
" . . . .
"A. Up to that time? '
"Q. Yes.
"A. No.
"Q. You hadn't had any up to that time? And you didn't have any after that time, I take it?
" . . . .
"A. Not after that time; no.
" . . . .
"Q. In other words, there was never any trouble or dispute about your association with Gladys?
" . . . .
"A. No; no serious trouble.
"Q. Well, was there any trouble?
"A. Well, nothing of any serious nature; no.
"Q. Well, just what was it, if there was any trouble?
" . . . .
"A. Well, I don't know just exactly how to answer that, what the nature of it was.
"Q. Well, tell what it was, then.
" . . . .
"Well, I was friendly with my sister-in-law, and that's about the limit of it.
"Q. Platonic friendship?
"A. Absolutely."

Other evidence along the same line which showed or tended to show the fact that trouble had existed between appellant and his wife by reason of his association and conduct with his sister-in-law, Gladys, appears in the record. It further appears that back as far as March 19, 1937, appellant had had trouble with his wife and members of the Bailey family and particularly with her father, upon whom he committed an assault resulting in his arrest, and that this feeling of unfriendliness continued down to and still existed at the time of the homicide. No other conclusion can be gathered from the record than that appellant's association

with his sister-in-law, Gladys, reoccurring two days before the homicide further intensified the trouble that had theretofore existed between appellant and members of the Bailey family.

To this entire line of testimony appellant interposed strenuous objections based upon the grounds, among others, that it was not admissible for the reason that it was not brought out on direct examination; that it was too remote; that it was incompetent, irrelevant and immaterial, and being of a prejudicial nature constituted reversible error.

The trial court admitted the evidence in response to appellant's statement that he did not "know of any trouble" and *"I haven't had any trouble"*, with his wife or members of her family.

The rule is well established that cross-examination is largely within the discretion of the trial judge and unless this discretion is abused in allowing the cross-examination to go beyond the matters testified to on the direct examination or connected therewith it will not be held to be error. In *State v. McClurg,* 50 Ida. 762, at 788, 300 Pac. 898, the rule is stated that:

"The extent to which the cross-examination on collateral or immaterial issues may be limited is largely in the discretion of the trial judge."

See, also, *State v. Mox Mox,* 28 Ida. 176, 152 Pac. 802; *State v. Tilden,* 27 Ida. 262, 147 Pac. 1056; 40 Cyc. 2480, and notes.

It will be remembered that appellant denied that he knew Hunter. He testified specifically that he did not know that there was any trouble and that he had had no trouble and he could not understand why they would not let his wife and children come out to the car. There was a sufficient basis upon which to permit the state on cross-examination to go into the question of trouble. If the state had been precluded from going into the question of trouble in the face of appellant's denials and statements that there had been no trouble, that he did not understand why he could not see his wife and children, and that he had had no trouble, the jury would have been at a total loss to understand the material facts of the case. Appellant denied that he had the conversation with Harold

Bailey prior to going to the Bailey house, just preceding the homicide, in which conversation appellant said that he would come out and rub them all out and that he had a gun with a hundred shells, or words to that effect. This explains why Harold Bailey had a gun when appellant arrived. This explains why Bistline and Hunter happened to go to the house. Appellant denied that he had a telephone conversation at the Busy Bee grocery immediately following the homicide in which he stated that he had gotten two of them and was going back after the rest. Appellant denied that he shot the Officers Evans and Nelson at the time of his arrest before they fired at him. All of these positive denials, together with his statement that there was and had been no trouble, made a direct conflict in the evidence wherein the jury could not believe appellant's testimony and that of other witnesses. In other words, if the jury believed other witnesses they could not believe that appellant had had no trouble. In *State v. Van Vlack,* 57 Ida. 316, 65 Pac. (2d) 736, this court held that:

"The purpose of all cross-examination is to weaken or show the untruthfulness of the testimony of the party examined or the party's bias or prejudice."

The state undoubtedly had the right to question appellant on cross-examination as to his relations with the members of the Bailey family to establish the fact there was ill feeling and trouble between appellant, his wife and the Bailey family, otherwise the jury would have been left wholly in the dark as to certain vital and necessary facts upon which to base their verdict. Appellant offered himself as a witness and he became, as any other witness, subject to cross-examination as to all matters of fact and circumstances leading up to and surrounding the commission of the homicide and connected therewith or related thereto. The rule would seem to be well settled that where a defendant in a criminal trial voluntarily takes the witness stand in his own behalf he is subject to the same rules applicable to other witnesses and may be cross-examined in regard to all matters to which he has testified on his direct examination or connected therewith. In *State v. Martinez,* 43 Ida. 180, 195, 250 Pac. 239, the rule is stated:

"The provision of article 1, section 13, of the constitution that 'no person shall . . . . be compelled in any criminal case to be a witness against himself.' expressed also in C. S. sec. 8623, is subject to the rule that one who has voluntarily made himself a witness in his own behalf is subject to the same rules of cross-examination that apply to all other witnesses (*State v. Gruber*, 19 Ida. 692, 115 Pac. 1), and he may be so cross-examined as to any facts stated in his direct examination or connected therewith. (C. S., sec. 8034.)"

See, also, *State v. Wilson*, 41 Ida. 616, 243 Pac. 359; *State v. Cox*, 55 Ida. 694, 46 Pac. (2d) 1093; *State v. Van Vlack, supra; State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540; *State v. Silva*, 21 Ida. 247, 120 Pac. 835; *State v. Gruber*, 19 Ida. 692, 115 Pac. 1; sec. 16–1205, I. C. A.; *People v. Maughs*, 8 Cal. App. 107, 96 Pac. 407.

It is insisted by appellant that the court erred in admitting in evidence testimony of appellant's acts, conduct and conversations occurring shortly subsequent to the commission of the homicide. It will be remembered that the deceased was shot and mortally wounded in appellant's car by the discharge of a bullet from appellant's gun in appellant's hands which entered the body of the deceased and from which he died about 2:30 P. M. July 12th. Immediately following the fatal shooting appellant hurriedly left his car, ran across the street into an adjacent lot, and there is evidence, which is corroborated, that he telephoned the Bailey house within ten minutes or such a matter after leaving his car; that he took a taxi after leaving the Busy Bee grocery and was let out on the campus of the University of Idaho, Southern Branch, that he then went to the Dods home where he remained for approximately two hours then going to the building in course of construction on the campus where at 9 o'clock he was located and taken into custody after the exchange of shots with and the wounding of the two officers as heretofore recited.

It is the theory of the state that this evidence was admissible as evidence of flight tending to show a guilty conscience and that it was all a part of the facts and circumstances connected with and surrounding the commission of the homicide. Appellant contends strenuously that this evi-

dence was not admissible upon the theory of flight and as evidence tending to show consciousness of guilt, that it had no such connection with the commission of the homicide as to become material or competent and was too remote in point of time. With this contention we are not in accord. In homicide cases evidence of flight is always admissible and this is true even though the homicide be admitted. (*State v. Bush*, 50 Ida. 166, 295 Pac. 432; *State v. Baird*, 13 Ida. 29, 88 Pac. 233; *State v. Davis*, 6 Ida. 159, 53 Pac. 678; *State v. Seymour*, 7 Ida. 257, 61 Pac. 1033; *State v. Lyons*, 7 Ida. 530, 64 Pac. 236.) The conduct and declarations of a defendant at the time of arrest are competent evidence. (*State v. Poynter*, 34 Ida. 504, 205 Pac. 561, 208 Pac. 871; *State v. Wilson*, 41 Ida. 616, 243 Pac. 359; 16 C. J. 553, sec. 1070.)

Evidence was also introduced by the state upon cross-examination of appellant that he had obtained from outside of the jail a shaving brush in which was concealed a bullet and four grains of morphine. It was established upon the trial that anything above half a grain of morphine would produce death if taken hypodermically and by mouth the dose would have to be double what it was hypodermically. This evidence was introduced for the purpose of establishing an attempt upon the part of appellant to escape from the jail or to commit suicide while confined therein. The rule would seem to be that evidence of escape, attempted escape, or preparation to escape and preparation or attempt to commit suicide, is admissible for the purpose of showing a consciousness of guilt. (Wharton's Crim. Ev., 11th ed., vol. 1, p. 411, sec. 307; *State v. Sullivan*, 34 Ida. 68, 199 Pac. 647, 17 A. L. R. 902; *State v. Croxton*, 173 La. 699, 138 So. 513; *Commonwealth v. Green*, 302 Mass. 547, 20 N. E. (2d) 417; *People v. Duncan*, 261 Ill. 339, 103 N. E. 1043; *State v. Painter*, 329 Mo. 314, 44 S. W. (2d) 79; *State v. Jaggers*, 71 N. J. L. 281, 58 Atl. 1014, 108 Am. St. 746; *Commonwealth v. Mercier*, 257 Mass. 353, 153 N. E. 834.)

Appellant insists the evidence is insufficient to sustain the conviction of first degree murder. From the authorities hereafter cited the question of the degree of the crime is one exclusively for the jury and its determination

in this respect will not be disturbed where there is any substantial evidence to support it. (Sec. 19–2012, I. C. A.; *State v. Levy,* 9 Ida. 483, 75 Pac. 227; *State v. Fleming,* 17 Ida. 471, 106 Pac. 305; *State v. Gruber, supra; State v. Caviness,* 40 Ida. 500, 235 Pac. 890; *State v. McClurg, supra; State v. Jurko,* 42 Ida. 319, 245 Pac. 685; *State v. Van Vlack, supra; State v. Juhrey,* 61 Mont. 413, 202 Pac. 762; *People v. Wells,* 10 Cal. (2d) 610, 76 Pac. (2d) 493; *People v. McNeer,* 14 Cal. App. (2d) 22, 57 Pac. (2d) 1018; *State v. Randolph,* 49 Nev. 241, 242 Pac. 697; *Robinson v. People,* 76 Colo. 416, 232 Pac. 672; 26 Am. Jur. 470, sec. 455; 20 Am. Jur. 1067, sec. 1216.) We are convinced there is sufficient substantial and competent evidence to support the jury's verdict that appellant is guilty of first degree murder.

Appellant complains of and assigns as error the giving of instruction number 12 as follows:

"Malice, although in its popular sense means hatred, ill will or hostility to another, yet, in its legal sense has a different meaning, and characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse.

"Malice is not confined to ill will toward any particular individual, but is intended to denote an action flowing from any wicked or corrupt motive; a thing done with a wicked mind, when an act has been attended with such circumstances as evince indications of a heart regardless of social duty, or fatally bent on mischief. Hence, malice is implied from any deliberate or cruel act against another, however sudden, which shows an abandoned and malignant heart."

It is appellant's contention that the foregoing instruction is clearly erroneous for the reason that it is stated therein that:

"malice is not confined to ill will toward any particular individual."

and that:

"Under the facts of this case, with appellant not even knowing who Hunter was or that he was an officer and with Hunter being the aggressor as he was, after plainly seeing the appellant's gun pointed toward the Baileys, and after Hunter had been in the Bailey house and knew from them

their feelings toward the appellant, and Hunter grabbing the gun as he did and violently jerking it, to say that even if there was no malice toward Hunter that the appellant would be guilty of murder in the first degree and malice would be presumed if the jury could find that the appellant had malice toward the Baileys, is error.''

 The evidence supports the conclusion that appellant knew who Hunter was, that he knew that he was an officer. The evidence does not disclose that Hunter was the aggressor. True, the evidence shows that Hunter undertook to secure possession of appellant's gun or to disarm him and that appellant resisted. Whether Hunter used more force than necessary, what the condition of appellant's mind was toward Hunter and whether his killing of Hunter was accomplished with malice were questions of fact for the jury.

Appellant relies in attacking instruction number 12 on *State v. Rogers,* 30 Ida. 259, 163 Pac. 912, and *State v. Hunter,* 55 Ida. 161, 39 Pac. (2d) 301. We do not understand that the definition of malice found in *State v. Rogers* and *State v. Hunter, supra,* was held to be erroneous on the ground that the instructions were too broad and were not confined to malice on the part of the defendant toward the person killed. Instruction number 12 is not controlled by either of the foregoing authorities. An examination of the instruction dealing with "malice" criticized in *State v. Hunter* and *State v. Rogers, supra,* and held to be erroneous in both cases, discloses that such instructions were prefaced with the sentence:

"The court instructs the jury that malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. . . . . ''

These instructions were criticized because of the use of the word "anger," which would make all homicides murder if committed in anger, whereas a killing done in anger without malice would amount only to manslaughter. No such language is used in instruction number 12, *supra.*

 It is well settled under our practice that instructions must be read, considered and applied as a whole. (*State v. McClurg, supra; State v. Stratford,* 55 Ida. 65, 37 Pac. (2d) 681.) The court's charge herein contained an instruction to the effect that the instructions must be consid-

ered together and as a whole, which was proper. (*State v. Dunlap,* 40 Ida. 630, 235 Pac. 432.)

Instruction number 12 must be read and considered in conjunction with instruction number 13, which reads as follows:

"You are further instructed that all anger is not malice; that one may be angry or indignant, and yet have no malice in his heart, or he may entertain a feeling *or* ill will without thought of doing bodily harm to him who is the object of his dislike, yet anger or ill will, or both, sometimes inspire and characterize malice which leads to murderous violence. It is such anger and ill will, evidencing a wicked and corrupt intent, a condition of heart and mind having no regard for social or moral obligations, which constitutes legal malice within the meaning of this instruction." (Emphasis ours.)

The matter contained in instruction No. 12 was formulated by this court in *State v. Hunter, supra,* as a proper instruction to supplement the definition of malice given in instruction number 23 in that case, and will be found on page 165 of 55 Idaho. The only difference between instruction number 13 herein, and the instruction approved in *State v. Hunter, supra,* is that the word "or" is used in the third line of instruction number 13 in the place of the word "of" in the third line of the instruction in *State v. Hunter, supra.* The word "or" as used in instruction number 13 is no doubt a typographical error. Instructions number 12 and number 13 were intended to define and did define the word "malice" and were limited to this purpose only, and when construed and considered together it appears no error was committed in giving them.

Appellant complains likewise that instruction number 18, purported to be a complete instruction as to murder in the first degree, is particularly erroneous for the reason that the words "deliberately" and "premeditatedly" are omitted therefrom. Instruction number 18 recites in part:

"If you believe from the evidence, beyond a reasonable doubt, . . . . the defendant, J. Britt Hargraves, Junior, in the manner specified in the Information, wilfully, unlawfully, feloniously and with malice aforethought, shot or otherwise wounded the deceased, F. F. (Bob) Hunter, and that within

a year and a day thereafter, and before the filing of said Information, the said F. F. (Bob) Hunter died from the effects of the wound or wounds so inflicted upon him by the defendant, your verdict should be that the defendant is guilty of murder in the first degree.''

In the information, read to appellant, and to which he entered his plea of not guilty, the words ''deliberately'' and ''premeditatedly'' are contained. The jury could not have been misled as to what constituted murder in the first degree when instructions numbered 9, 10, 11, 15 and 16 were read in connection with instruction number 18. From these instructions the jury was clearly cautioned that before it could find appellant guilty of murder in the first degree it must be satisfied beyond a reasonable doubt that appellant unlawfully, feloniously, deliberately and premeditatedly and with malice aforethought killed the deceased, Hunter.

Appellant attacks instruction number 31, which is as follows:

''The court charges you that upon a trial for murder, if the commission of the homicide by the defendant has been proved, the burden of proving circumstances in mitigation, or to justify or excuse him devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed amounts only to manslaughter, or that the defendant was justifiable or excusable. The court therefore charges you that in this case if you find that the prosecution, by the introduction of evidence, has proved the commission of the homicide on the part of the defendant beyond a reasonable doubt, and if you further find that such proof on the part of the prosecution does not tend to show that the homicide only amounts to manslaughter, or that the defendant is justified or excusable in committing it, then the court charges you that the burden of proving justification or excuse for the homicide devolves upon the defendant. However, the defendant is not required to establish such mitigation, justification or excuse by a preponderance of the evidence. It is sufficient, if, upon a consideration of all of the evidence in the case, the jury has a reasonable doubt of the defendant's guilt.''

It will be observed from a reading of the above instruction and said instruction as quoted in appellant's brief that the following portion is omitted from the brief:

"It is sufficient, if, upon a consideration of all of the evidence in the case, the jury has a reasonable doubt of the defendant's guilt."

When that portion of the instruction omitted from appellant's brief is considered in connection with the entire instruction it completely clarifies said instruction and eliminated the possibility of error. In *State v. Allen,* 54 Ida. 459, 34 Pac. (2d) 45, this court discusses at length the burden of proof in mitigation. The matter contained in instruction number 31 complies with the decision in *State v. Allen, supra,* which case approves the matter contained in instruction number 31.

We have concluded that no useful purpose could be served by discussing each and all of the instructions complained of by appellant. Furthermore, to do so would extend this opinion to an unnecessary and unreasonable length. Suffice it to say that we have with great care read and considered each and every instruction given and refused and when all the instructions given are read and considered as a whole we are unable to reach the conclusion that reversible, prejudicial error exists in the instructions given, or that the court erred in refusing to give requested instructions.

Appellant had a fair and impartial trial and was ably represented by distinguished counsel.

The judgment should be affirmed and it is so ordered.

Givens, Morgan and Holden, JJ., concur.

Ailshie, C. J., concurs in the conclusion reached.