506 P.2d 119

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Etha Marie FOLEY, Defendant-Appellant.**

**No. 10896.**

Supreme Court of Idaho.

Feb. 7, 1973.

W. Anthony Park, Atty. Gen., Peter E. Heiser, Asst. Atty. Gen., Boise, for plaintiff-respondent.

Howard Manweiler, Boise, for defendant-appellant.

DONALDSON, Chief Justice.

The appellant, Etha Marie Foley, was charged with and convicted of first degree murder.[1] Upon a jury verdict of guilty, she was sentenced to life imprisonment. The appellant admits having shot her husband on August 2, 1970, but she contends that the evidence presented at trial is insufficient to sustain a conviction of any crime greater than voluntary manslaughter. She therefore requests that this Court modify the judgment of conviction accordingly.

The appellant contends not only that the evidence is insufficient to sustain a finding of premeditation but also that the record

1. I.C. § 18-4003 provides:
   "Degrees of murder.—All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnaping or mayhem, is murder of the first degree. Any murder of any peace officer of this state or of any municipal corporation or political subdivision thereof, when the officer is acting in line of duty, and is known or should be known by the perpetrator of the murder to be an officer so acting, shall be murder in the first degree. All other kinds of murder are of the second degree."

indicates the presence of provocation or heat of passion sufficient to negate the existence of the malice aforethought [2] and deliberation requisite to a conviction for first degree murder.

On the day of the homicide, after a series of altercations between the deceased and the appellant, the deceased left the appellant at a picnic and drove to their residence in Boise. After an intermediate stop at the police station, where the appellant complained that the deceased had stolen her car, the appellant hired a taxicab to take her home. When the cab was about a block away from the appellant's residence, the appellant asked the taxicab driver to pause beside an oncoming pickup truck occupied by the appellant's mother and a friend. According to the cab driver, the appellant then asked the occupants of the pickup whether the deceased was at home. The appellant's mother replied that he was at home. And, according to the cab driver, the appellant then said, "You better get back there because I am going to shoot him." The driver of the pickup said, "Oh, now, everything is going to be all right." To which the appellant replied, "No, he stole my car and I am going to shoot him." On direct examination at trial, the appellant was asked whether she remembered saying, while she was in the taxicab, that she was going to shoot her husband; she replied, "No, sir, I don't believe I did." The appellant's mother testified that she did not hear the appellant say she was going to shoot her husband. The other passenger present in the pickup at the time in question did not testify at the trial. The cab driver testified that the appellant made the incriminating statement at 3:33 p. m. and that the appellant reached her home by 3:34 p. m. Because the appellant appeared so angry, the cab driver called the dispatcher and suggested notification of the police. At approximately 3:35 p. m., a police patrolman received a call ordering him to proceed to the appellant's house because a man had been shot. The officer arrived at the appellant's residence at about 3:38 p. m. and found the appellant's husband near death. The appellant pointed to a gun and stated that she had used it to shoot her husband.

The appellant testified to the following version of what occurred immediately before she shot her husband. As she entered the living room, her husband hit her in the ribs. She demanded her car keys and asked him to leave the house. He refused, whereupon she went into the kitchen and picked up a gun from a cupboard. She again demanded her car keys and his departure. The deceased arose from a sitting position and with clenched fists came toward the appellant. At the same time, the deceased said, "Shoot, you dirty bitch, shoot." And the appellant then shot him.

The appellant's mother, who was present when the shooting occurred, gave this version: The appellant asked her husband for her car keys. The appellant's mother asked the deceased to leave. He refused both requests. The appellant yelled, "You are driving me out of my mind." The appellant went into the kitchen, came out with a gun, and cocked it. The deceased lunged at the appellant with clenched fists. The appellant raised the gun and said, "I will ask you one more time." The deceased retorted, "Go ahead and shoot, you dirty bitch." The deceased had "just come back from the lunge" when the appellant fired the gun.

To establish the crime of first degree murder, direct evidence of a deliberate and premeditated purpose to kill is not required. The necessary elements of

2. I.C. §§ 18–4001 and 18–4002 provide:
"18–4001. *Murder defined.*—Murder is the unlawful killing of a human being with malice aforethought."
"18–4002. *Express and implied malice.*—Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

deliberation and premeditation may be inferred from the proof of such facts and circumstances as will furnish a reasonable foundation for such an inference, and where the evidence is not in law insufficient, the matter is exclusively within the province of the trier of fact to determine. People v. Saterfield, 65 Cal.2d 752, 56 Cal. Rptr. 338, 423 P.2d 266, 271 (1967), cert. denied, 389 U.S. 964, 88 S.Ct. 352, 19 L. Ed.2d 378 (1967); People v. Quicke, 61 Cal.2d 155, 37 Cal.Rptr. 617, 390 P.2d 393, 395 (1964); People v. Cartier, 54 Cal.2d 300, 5 Cal.Rptr. 573, 353 P.2d 53, 57 (1960); People v. Cole, 47 Cal.2d 99, 301 P.2d 854, 858 (1956); People v. Guldbrandsen, 35 Cal.2d 514, 218 P.2d 977, 980 (1950). From the facts hereinbefore summarized, the jury could reasonably have inferred that the killing perpetrated by the defendant was premeditated. Similarly, the jury could reasonably have concluded that the defendant shot the deceased without the provocation necessary to reduce the degree of the crime. In a case such as this, it is the province of the jury to determine whether the defendant is guilty of first degree murder as charged or, on the other hand, whether the defendant is guilty only of some lesser included offense. State v. Gomez, 94 Idaho 323, 325, 487 P. 2d 686 (1971); Carey v. State, 91 Idaho 706, 429 P.2d 836 (1967); State v. Livesay, 71 Idaho 442, 446, 233 P.2d 432 (1951); State v. Hargraves, 62 Idaho 8, 20–21, 107 P.2d 854 (1940); State v. Wallace, 83 Ariz. 220, 319 P.2d 529, 530 (1957); People v. Dewberry, 51 Cal.2d 548, 334 P.2d 852, 855 (1959); People v. Eggers, 30 Cal.2d 676, 185 P.2d 1, 6 (1947), cert. denied, 333 U.S. 858, 68 S.Ct. 728, 92 L.Ed. 1138 (1948); People v. Pope, 130 Cal.App.2d 321, 279 P.2d 108, 110–111 (1955). In People v. Pope, *supra,* a case similar on its facts to the case at bar, the court stated:

"Whether or not the appellant acted without malice during a sudden quarrel and in the heat of passion, and whether or not the evidence disclosed premeditation were factual questions for the jury. The evidence, with the inferences that might reasonably be drawn therefrom, was sufficient to support the verdict rendered. The basic cause of defendant's anger was a matter of long standing and the quarrel had continued at intervals through most of that day; the applying of opprobrious epithets by each to the other was nothing new, and the threats to kill were obviously based upon other matters which had been long continued * * *. It cannot be held, as a matter of law, that the required elements to establish murder in the first degree were not sufficiently established by the evidence." 279 P.2d at 110–111; *accord,* State v. Gilreath, 100 Ariz. 5, 409 P.2d 713 (1966); People v. Hough, 24 Cal.2d 535, 150 P.2d 444, 447 (1944).

It is true that the jury could have properly determined that the appellant was guilty only of voluntary manslaughter and not guilty of first degree murder. However, the evaluation of the testimony was for the jury, and the jury found the defendant guilty of first degree murder. Where, as in this case, the evidence, although conflicting, is sufficient to sustain the verdict, this Court will not reverse the judgment. State v. Newman, 70 Idaho 184, 190, 214 P.2d 159 (1950); State v. Johnston, 62 Idaho 601, 610, 113 P.2d 809 (1941); People v. Deloney, 41 Cal.2d 832, 264 P.2d 532, 535 (1953).

Judgment of conviction affirmed.

SHEPARD, McQUADE and McFADDEN, JJ., and QUINLAN, D. J., concur.