No. 47,189

Eulysess M. Reid, *Appellant*, v. State of Kansas, *Appellee*.

(515 P. 2d 1040)

Opinion filed November 3, 1973.

*E. Roger Horsky*, of Leavenworth, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon*, county attorney, argued the cause, and *Vern Miller*, attorney general, *Hall Triplett* and *Dennis Dietz*, special prosecutors, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This is an appeal by the petitioner, Eulysess M. Reid, from an adverse judgment entered in a proceeding commenced by him under K. S. A. 60-1507.

The chain of events giving rise to this action stretches back to October 8, 1968, when a violent incident occurred at the Kansas State Penitentiary culminating in felonious assaults on an officer and an unidentified convict. The officer, Travis Adams, was paralyzed as a result of the attack. As an aftermath of the incident Mr. Reid and other convicts involved in the assaults were placed in the prison's Adjustment and Treatment Center at the request

of agents of the Kansas Bureau of Investigation, who had taken charge of the case.

On March 28, 1969, two charges of assault with intent to kill were filed against Reid, one charge pertaining to the assault against Mr. Adams and the other to the attack on the unfortunate inmate. Felony charges arising out of the same incident were filed against seven other convicts, as well.

A preliminary hearing was held for Reid and his seven co-defendants on April 10, 1969. The record indicates that counsel was requested by all the accused but their requests were denied. The record further discloses that the prisoners were unruly and engaged in tumultuous behavior before the examining magistrate and force was required to restrain the most obstreperous members of the group, including Mr. Reid. Despite the disorders which took place, the magistrate was ultimately able to conduct a preliminary examination at which time witnesses appeared and testified, and the defendants, including the petitioner, acted as their own counsel.

An information was filed in the district court of Leavenworth County, Kansas, on April 24, 1969, charging Reid with two counts of assault with intent to kill, and on June 5, 1969, Mr. James N. Snyder, Jr., a Leavenworth attorney, was appointed to represent him.

On December 9, 1969, Reid appeared before the district court and entered a plea of guilty to one count of assault with intent to kill while the other count was dismissed by the state. The prosecution did not introduce evidence of previous convictions and Mr. Reid was sentenced to the Kansas State Penitentiary for a period of not exceeding 10 years, the term to commence at the expiration of any sentence or sentences previously imposed against him.

The petitioner's action for relief under K. S. A. 60-1507 was heard by the trial court on December 17, 1971, at which time Reid appeared personally and was represented by Mr. E. Roger Horsky, a member of the bar of this state. At the conclusion of the evidentiary hearing, at which witnesses testified both on behalf of the petitioner and on behalf of the state, the district court, on February 8, 1972, entered its judgment denying relief.

The questions presented are set forth in petitioner's brief as follows:

"1. Did the Court err in finding that defendant failed to establish that his rights were prejudiced by not having been effectively represented by counsel throughout the proceedings?

"2. Did the Court err in finding that defendant's plea of guilty was free and voluntary in view of defendant's lengthy special confinement and lack of effective counsel?"

In connection with Mr. Reid's first claim of error, the trial court found that he had failed to establish that his rights were prejudiced by not having been provided with counsel at the preliminary examination. We believe the record supports such a conclusion. This court in the past has frequently held that the preliminary examination is not a critical point in the criminal process and that, absent a showing of prejudice, the failure to provide counsel to an indigent accused at the hearing does not constitute prejudicial error. (*Cooper v. State,* 196 Kan. 421, 411 P. 2d 652; *Stewart v. State,* 206 Kan. 147, 476 P. 2d 652.) No prejudice to Mr. Reid's substantial rights is shown to have resulted in this case from absence of counsel at the preliminary hearing.

In *Johnson v. State,* 210 Kan. 498, 499, 502 P. 2d 838, we acknowledged our awareness of the decision in *Coleman v. Alabama,* 399 U. S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999, where for the first time the United States Supreme Court held the preliminary hearing to be a critical stage in criminal proceedings requiring assistance of counsel. However, in the later case of *Adams v. Illinois,* 405 U. S. 278, 31 L. Ed. 2d 202, 92 S. Ct. 916, the same august tribunal held that retrospective application was not to be given the *Coleman* holding. The preliminary hearing in the instant case was prior to *Coleman v. Alabama,* supra, and prior also to K. S. A. 1972 Supp. 22-4503, according the right to counsel at all stages of a criminal proceeding. Consequently, we adhere, in this case, to our former rule. (*Johnson v. State,* supra; *Delano v. State,* 209 Kan. 670, 674, 498 P. 2d 18.)

The defendant's principal contention, however, is that he was coerced into entering his plea of guilty. He argues that continued confinement in the Adjustment and Treatment Center, a somewhat euphemistic term for solitary confinement within the prison walls, in combination with inattentive and ineffective counsel created such a coercive atmosphere around him that his guilty plea was not freely and voluntarily entered, but was constrained.

It appears from the record that although Mr. Snyder was ap-

pointed counsel on June 5, 1969, he did not visit his client in the penitentiary at any time, nor did he see his client until December 9, 1969, when Reid was brought into court and conferred with him before entering his plea of guilty. Mr. Snyder was vague about the duration of the conference; he could not say whether it was thirty minutes, an hour, or fifteen minutes.

It would seem incomprehensible that a member of the bar of this state would utterly ignore a client, indigent or not, for a period of more than six months, and we cannot but note what on the surface, and unexplained, appears to be untoward neglect. However, we are not here called upon to sit in judgment on counsel's conduct except as it may have reacted adversely to his client's cause. Rather, we are to determine whether the trial court's finding "that movant's plea of guilty was freely and voluntarily entered" finds substantial support in the record.

Our rule is well established that confinement in isolation is not in itself sufficient to sustain a finding that a plea of guilty has been entered improvidently, involuntarily, or under duress. (*Knight v. State*, 203 Kan. 652, 455 P. 2d 578; *Lee v. State*, 204 Kan. 364, 461 P. 2d 794; *Davis v. State*, 204 Kan. 372, 461 P. 2d 812.) Our latest decision to this effect is found in *State v. Ridge*, 208 Kan. 236, 491 P. 2d 900, where one of Reid's co-defendants unsuccessfully advanced the same argument made here.

But the defendant argues in substance that he was not furnished effective assistance of counsel, and that this circumstance added to the compulsive atmosphere in which he was placed. This court has had a good deal to say on the subject of effective counsel, the sum total of which has been that before it can be said there has been a denial of the constitutional right to counsel, it must clearly appear that the representation afforded the accused was wholly ineffective and inadequate. (*Widener v. State*, 210 Kan. 234, 236, 499 P. 2d 1123; *Winter v. State*, 210 Kan. 597, 603, 502 P. 2d 733.) In *State v. Richardson*, 194 Kan. 471, 487, 399 P. 2d 799, we said:

". . . The burden rests upon the petitioner to show that his counsel was so incompetent and inadequate in representing him that the total effect was that of a complete absence of counsel. . . ."

(See, also, *Toland v. State*, 200 Kan. 184, 186, 434 P. 2d 550; *Shores v. State*, 195 Kan. 705, 709, 408 P. 2d 608.)

We have also said on frequent occasions that the adequacy of an attorney's services to his client must be gauged by the totality of his representation. (*Call v. State,* 195 Kan. 688, 408 P. 2d 668; *Davis v. State,* supra; *Baker v. State,* 204 Kan. 607, 614, 464 P. 2d 212.)

Measured by the standards set out in the foregoing cases, we cannot stigmatize Mr. Snyder's services to his client as being, in effect, no representation whatever. Desultory as his efforts may have been, they resulted in the dismissal of one count of assault with intent to kill and a sentence imposed without reference to the Habitual Criminal Act. Speaking realistically, it is evident that plea bargaining had been going on between opposing counsel, the net result of which was to the defendant's considerable advantage.

After an evidentiary hearing the trial court concluded that Reid's guilty plea was freely and voluntarily made. In making this determination the court had before it Reid's own testimony that when pleading guilty he had advised the court that he was guilty, that his plea was being freely and voluntarily entered, that he desired the court to accept his plea and that he had no cause to show why judgment should not be pronounced. Against this firm record, Reid now explains he was not telling the truth at the allocution; that he said what his attorney told him to say; and that he did so to escape solitary confinement. Obviously the trial court, as the trier of the facts, did not accept the explanation at face value.

We find nothing in the record to indicate physical abuse or hardship which might have overcome the petitioner's will or have coerced him into a false plea of guilty. The record reflects neither threatening behavior on the part of prison officials nor promises that Reid would be released from close confinement if he pleaded guilty. Indeed, the inference is justified that no promises of that character were made to Mr. Reid inasmuch as he was not released from segregation upon entry of his plea but was retained in the A & T Center for nearly four months thereafter.

Reid testified he was told by the Leavenworth County Attorney, Mr. Tillotson, that he would not be released from segregation until his case was disposed of, but this was categorically denied by the county attorney who stated "I would deem such a practice quite reprehensible." Reid also stated on the stand he was informed by prison guards that the only way he could be released would be by guilty plea or when all cases were disposed of. This is not corroborated in the record, although the practice seems to have been to

segregate a prisoner at the Bureau's request and not release him until his case was completed or the Bureau gave permission to return him to the general prison population. Even so, we find nothing of record to justify a belief that such practice was essentially pernicious.

We are constrained to conclude the trial court's findings were sustained by substantial competent evidence and its judgment must be affirmed.

It is so ordered.

PRAGER, J., dissenting: I cannot in good conscience concur in the decision of the majority of the court that the petitioner Reid's constitutional right to the assistance of counsel was satisfied under the totality of circumstances shown in the record in this case. In *Avery v. Alabama*, 308 U. S. 444, 84 L. Ed. 377, 60 S. Ct. 321, the Supreme Court of the United States stated that the mere formal appointment of counsel, without allowing an opportunity for counsel to confer, to consult with the accused and to prepare his defense, may constitute a violation of the constitutional guaranty of assistance by counsel.

In the past several years the United States Court of Appeals for the Fourth Circuit has considered a number of habeas corpus cases alleging ineffective representation of counsel. Out of these cases has arisen the proposition that late appointments and lack of preparation of counsel, "are inherently prejudicial, and a mere showing of them constitutes a *prima facie* case of denial of effective assistance of counsel, so that the burden of proving lack of prejudice is shifted to the state." *Twiford v. Peyton*, 372 F. 2d 670, 673 (4th Cir. 1967); *Johnson v. Cox*, 315 F. Supp. 875 (D. C. Va. 1970). In *Turner v. State of Maryland*, 318 F. 2d 852 (4th Cir. 1963), the court stated that when the initial consultation between a court-appointed attorney and his client occurs only a short time before the trial, normally, in the absence of clear proof that no prejudice resulted, the court should be obliged to treat the lawyer's representation as inadequate and the trial as falling short of the standards of due process guaranteed by the Fourteenth Amendment. In *Johnson v. Cox*, supra, the standards required of attorneys appointed to defend indigent defendants are stated to be as follows:

"Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as

necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby. Coles v. Peyton, 389 F. 2d 224, 226 (4th Cir.). . . ." (p. 877.)

The American Bar Association Standards for Criminal Justice pertaining to The Defense Function set forth with particularity the basic duties of a lawyer for the accused necessary to satisfy his obligations to the accused and to the administration of justice. Under The Defense Function, Standard 1.1, it is stated that the basic duty which the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate, with courage, devotion and to the utmost of his learning and ability, and according to law. Standard 4.1 declares that it is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty. Standard 3.8 states that the lawyer has a duty to keep his client informed of the developments in the case and the progress of preparing the defense. Standard 3.9 declares that once the lawyer has taken the representation of an accused, his duties and obligations are the same whether he is privately retained, appointed by the court, or serving in a legal aid or defender system.

With these cases and standards in mind let us turn to the undisputed evidence which is set forth in the record in this case and which establishes the following factual circumstances:

(1) The alleged assault which was the basis of the charge in this case took place on October 8, 1968. The petitioner Reid was placed in solitary confinement in the Adjustment and Treatment Center in the penitentiary on October 9, 1968. His plea of guilty was entered on December 9, 1969, at which time he had been in solitary confinement for approximately 14 months.

(2) On March 28, 1969, two charges of assault with intent to kill

were filed against Reid. He requested but was denied counsel at his preliminary hearing which was held on April 10, 1969.

(3) An information was filed in the district court of Leavenworth county on April 24, 1969. On June 5, 1969, Mr. James N. Snyder, Jr., a Leavenworth attorney was appointed to represent Reid. There is nothing in the record to show that Reid appeared personally in court at the time of this appointment and apparently he did not do so.

(4) After Snyder was appointed to represent Reid, Reid wrote many letters to Snyder. Snyder never went to the penitentiary to confer with Reid nor did he answer his letters. Snyder never saw or conferred with Reid until the day Reid's plea of guilty was entered, December 9, 1969.

(5) After Snyder's appointment on June 5, 1969, Reid, not having an opportunity to confer with his appointed counsel, discussed the case with representatives of the Kansas Bureau of Investigation and requested them to advise the county attorney that he wanted to come into court and plead guilty. The county attorney set the case for trial after he received a letter from Reid to that effect. Reid testified that he wrote the letter because he was told that was the only way he could get out of solitary confinement.

(6) Reid was not able to consult with his appointed counsel until after the county attorney had set the case for plea. At that time the decision to enter a plea had already been made by Reid without the advice of counsel and counsel did not make his services available to Reid until the very day the plea had been scheduled for hearing before the court.

The character of Snyder's legal representation of Reid can best be shown from Snyder's testimony at the 60-1507 hearing in December 1971. On direct examination Snyder testified that he was vaguely familiar with Reid and *apparently* he had received an appointment to represent him; that he had no records which he had maintained in the case; that he had no independent recollection as to what transpired when Reid entered his plea of guilty; that he never visited Reid at the Kansas State Penitentiary after his appointment. His recollection was that Reid was anxious to plead guilty and had written a letter to the county attorney's office to that effect. Snyder did not know how long he discussed the matter with Reid on the day the plea was entered, maybe for one hour, maybe 30 minutes, maybe 15 minutes. Prior to the entry of the

plea he discussed plea bargaining with the county attorney. The result was to get one assault count dropped and the county attorney agreed not to enforce the habitual criminal act on the remaining count. The county attorney showed Snyder an admission made by Reid. There was no way to win the case. Snyder further testified that when Reid expressed his desire to plead guilty *he may have stated that he wanted to plead guilty because he wanted to get out of solitary confinement.*

In denying Reid's motion for relief under 60-1507 the trial court made no findings of fact to justify its conclusion that the movant had failed to establish that his rights were prejudiced by not having an attorney to represent him and that his plea of guilty was not freely and voluntarily entered. Furthermore the trial court placed the burden of proving prejudice on the petitioner rather than upon the state where under the federal decisions discussed above it properly belonged in view of the fact that the initial consultation between Reid and his court-appointed attorney occurred only a short time before the plea of guilty was entered. When the undisputed facts which establish the type of legal representation afforded Reid in this case by his counsel are considered in the light of the obligations of defense counsel under the federal decisions and the American Bar Association Standards for Criminal Justice discussed above, I cannot reach any other conclusion but that the defendant was denied his constitutional right to the effective assistance of counsel. I would reverse the case with directions to the trial court to set aside the conviction and Reid's plea of guilty and to proceed to trial on the original information filed in the case.