532 P.2d 574

The STATE of Idaho, Plaintiff-Respondent,

v.

Harold D. McCLELLAN, Defendant-Appellant.

No. 11079.

Supreme Court of Idaho.

Feb. 3, 1975.

John Hjellum, II, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., James P. Kaufman, Asst. Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

On July 27, 1971, the appellant, Harold McClellan, came home to the apartment complex he managed after an afternoon of drinking with two co-workers, Richard Lee Lewis and his father, both of whom also lived in the apartment complex. Appellant testified that he was not intoxicated.

Upon their arrival the deceased, Everett Kemano, a resident of the same complex, called the younger Mr. Lewis into Kemano's apartment to complain about the noise the Lewis family made in the evenings. There was testimony at trial that Kemano was a large man with violent tendencies. Lewis and Kemano became engaged in a loud verbal argument, and McClellan entered the apartment to investigate. After a moderately angry exchange with Kemano, McClellan left the apartment and returned shortly with his loaded .44 magnum pistol. The pistol had been kept in the trunk of appellant's automobile.

It is disputed whether McClellan pointed the gun directly at Kemano, but the record is clear that the pistol was visible and McClellan told Kemano to remain in the chair in which he was sitting. At that point, Kemano allegedly lunged from the chair at McClellan who was standing approximately ten feet away. McClellan testified at trial that he believed Kemano was reaching into his back pocket for a weapon as he lunged. McClellan fired the pistol once and Kemano was struck by the slug first in the arm then the abdomen. Kemano was dead when the police officers arrived.

McClellan was charged with murder in the first degree and found guilty by the jury of murder in the second degree. He was subsequently sentenced to serve a period not to exceed thirty years in the Idaho State penitentiary with credit allowed for the time spent in jail on the charge.

From that judgment of conviction this appeal is taken.

Although appellant makes numerous assignments of error, it is necessary to discuss only seven of them. In considering the first of these, we note initially that appellant is represented on appeal by an attorney other than that of his trial appearance. The first assignment of error claims that appellant was denied his right to effective counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Idaho Constitution. Allegedly, trial counsel's incompetence prevented appellant from enjoying the protection afforded him by those provisions. The Idaho rule on this issue is stated in State v. Wozniak, 94 Idaho 312, 486 P.2d 1025 (1971) as follows:

> "Appellant has assigned as error the inadequacy and ineffectiveness of his appointed counsel. However, failure to achieve acquittal, mistakes in judgment or errors in trial tactics are not sufficient grounds for a claim of ineffectiveness of counsel to deprive appellant of his Sixth Amendment rights. *See* United States v. Hammonds, 138 U.S.App.D.C. 166, 425 F.2d 597, 601 (1970); Hinton v. Henry, 311 F.Supp. 652, 654 (D.C.N.C. 1969). * * *." 94 Idaho 312, 320, 486 P.2d 1025, 1033.

*See also* The American Bar Association Standards for Criminal Justice, 1974. Upon our examination of the record before us, we conclude that appellant failed to meet the test as set forth above. Appellant's trial counsel participated ac-

tively in the trial proceedings and conducted vigorous cross-examination. The assignment of error is without merit. State v. Wozniak, *supra*; Pulver v. State, 93 Idaho 687, 471 P.2d 74 (1970).

■ Appellant next assigns as error the admission into evidence of testimony of police officers as to statements made by the appellant. Appellant argues that the statements were taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* requires that a suspect be informed of his various constitutional rights prior to any questioning by the police once that suspect has become the focal point of the investigation. The trial transcript indicates that the only pre-warning question asked was when the first officer to arrive on the scene approached an individual standing in front of the apartment complex and asked that individual if he knew who had done the shooting. This individual was the appellant and he replied that he had fired the shot. No more questions were asked of the appellant until he was handcuffed and given the *Miranda* warning. In light of those facts we find no error since the appellant was not the focal point of investigation at that time.

■ Appellant also argues that error was made in the trial court's failure to warn the appellant of his right to refuse to testify in his own defense. Appellant chose to testify on his own behalf, evidently to present his version as to what transpired prior to the shooting. Under the circumstances of this case, where there were eyewitnesses to the shooting, it was permissible trial strategy. Appellant had been previously convicted of three felonies, and therefore it was also acceptable trial strategy for defense counsel to present the evidence affirmatively rather than wait for the information to come out in cross-examination. Therefore, the defense counsel elicited from appellant that he had been convicted of the three prior felonies. The direct examination concluded with appellant's statement to the effect that he had no "problems with the law" since his marriage in 1966. On cross-examination the prosecutor inquired as to two arrests subsequent to 1966. Appellant acknowledged that he had been arrested but had not been convicted of the two separate crimes.

■ We cannot find error in the admission of the testimony about which appellant now complains. The cross-examination went to the truth of statements made by the appellant during direct examination. Since the appellant clearly waived his right not to testify, he was subject to proper cross-examination. The questions at issue were within the scope of such examination and therefore, together with the responses, admissible. State v. Starry, 96 Idaho 148, 525 P.2d 343 (1974); State v. Jesser, 95 Idaho 43, 501 P.2d 727 (1972); I.C. § 9–1205.

■ The appellant also takes issue with the admission at trial of a portion of a tape recording of an interview by a police officer of appellant's wife on the day of the shooting. While on the stand as a defense witness, appellant's wife testified as to certain statements made to her by the appellant immediately following the shooting. During cross-examination the witness was asked whether appellant made any statements other than those about which the witness had testified on direct examination. The witness replied that she had mentioned all the statements made by the appellant. During rebuttal the tape was admitted without objection by defense counsel and revealed that during the interview on the day of the shooting the witness told the questioning officer that the appellant told her not to say anything about the incident. This statement was not one of those mentioned by the wife on direct and cross-examination.

Appellant contends that admission of the taped statement constituted a violation of the marital privilege established by I.C. § 19–3002. However, that section provides that an individual can testify for or

against her spouse upon their mutual consent. The record indicates a waiver of the privilege. Since the appellant's wife was a competent witness, she was subject to the normal procedures of cross-examination. Thus, the tape was admissible under the rules governing cross-examination, I.C. § 9–1205.

█ Appellant assigns as error the admission of photographs of the deceased's body taken at the scene of the shooting. The photographs clearly reveal the wounds suffered by the deceased in the arm and abdomen. While appellant contends they are inadmissible as inflammatory and prejudicial, our examination of the photographs leads us to the conclusion that they are admissible under the test previously announced by the Court. State v. Hokenson, 96 Idaho 283, 527 P.2d 487 (1974); State v. Beason, 95 Idaho 267, 506 P.2d 1340 (1973).

█ Following the conviction for murder in the second degree, appellant was sentenced to serve a period not to exceed thirty years in the Idaho State Penitentiary with credit allowed for the time spent in jail on the charge. Appellant contends that this is cruel and unusual punishment in view of his good conduct in recent years. In light of appellant's prior felony convictions and the statutory provisions as to sentencing, it cannot be said that appellant has demonstrated the clear abuse of discretion by the trial court necessary for this Court to interfere with the sentence. State v. Ogata, 95 Idaho 309, 508 P.2d 141 (1973); State v. Butler, 93 Idaho 492, 464 P.2d 931 (1970); I.C. § 18–4004.

█ Finally, the appellant argues that the judgment of conviction was not supported by the evidence. The eyewitnesses to the event provided the sufficient evidence, regardless of conflict, necessary to support the verdict. State v. Foley, 95 Idaho 222, 506 P.2d 119 (1973).

This Court has reviewed the remaining twenty-two assignments of error and found them to be unsupported by the record.

The judgment of conviction is affirmed.

McQUADE, C. J., and SHEPARD and BAKES, JJ., concur.

McFADDEN, J., concurring specially.

McFADDEN, Justice (concurring specially).

I concur in the conclusion reached by the majority opinion but feel obligated to disagree with that opinion's reliance upon the case of State v. Wozniak, 94 Idaho 312, 486 P.2d 1025 (1971). In State v. Wozniak this court stated as follows:

"To constitute ineffectiveness of counsel, the circumstances must be so inadequate as to render appellant's trial 'a farce or mockery of justice.' While these words are not to be taken literally, they are nonetheless descriptive of the principles that the accused has a heavy burden in proving that his counsel is ineffective." 94 Idaho at 320, 486 P.2d at 1033.

It is my conclusion that the above test is not commensurate with the present day standards and should be abandoned. A more realistic test as to effectiveness of defense counsel should be devised in light of the constitutional requirements of both the State and Federal Constitutions of the right of an accused to "appear and defend in person and with counsel" (Idaho Const. Art. 1, § 13) or "to have the assistance of Counsel for his defense" (U.S.Const., 6th and 14th Amendments), and the interpretations of these constitutional rights by State and Federal Courts that have considered the issue. See: Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Twiford v. Peyton, 372 F.2d 670 (4th Cir. 1967); Reid v. State, 213 Kan. 298, 515 P.2d 1040 (1973).[1]

---

1. A number of courts have rejected the "farce or mockery" standard. In Beasley v. United States, 491 F.2d 687, 693 (6th Cir. 1974), the Court stated that "the 'farce or mockery' test should be abandoned as a meaningful standard for testing Sixth Amendment claims."

The American Bar Association has enunciated standards applicable to defense counsel in its Standards Relating to the Administration of Criminal Justice, 1974. Under the Defense Function Standard 1.1 (b), p. 117, an attorney owes a basic duty to serve as the accused's counsel and advocate, with courage, devotion and to the utmost of his learning and ability, and according to law. Standard 4.1, p. 125, declares that it is the duty of the counsel to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. Such an investigation contemplates efforts to secure information held by the prosecution and law enforcement authorities, regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty. Standard 3.8, p. 125, requires counsel to keep his client informed of developments in the case, and Standard 3.9, p. 125 imposes these duties upon counsel once he has undertaken representation of an accused, regardless of whether he was privately retained, appointed by the court, or serving in a legal aid or defender system. Other duties are imposed upon counsel by these standards, and a line of demarcation between the decisions to be made by counsel and those to be made by the accused is made by Standard 5.1, p. 127 et seq., concerning conduct of the case.

In State v. Kahalewai, 501 P.2d 977, 980 (Hawaii, 1972), that court stated in terms commensurate with my view:

" * * * In cases where the adequacy of counsel is in question, we must first examine the record with appellant's allegations in mind, to determine whether, viewed as a whole, the assistance provided appears to have been below the level of ordinary competence demanded of lawyers in criminal cases. If this examination shows that defenses crucial to appellant's case could have been, but were not raised, or that trial counsel inexplicably failed to assert appellant's constitutional rights, the case will be examined further to determine whether counsel's actions were the result of informed judgment or constitutionally inadequate preparation. The issue of informed judgment, on which appellant places so much emphasis is only relevant where the actions or inactions resulting from that judgment seem unreasonable. If this were not so, every criminal conviction would be vulnerable on appeal to the allegation or admission that trial counsel's choice of defenses or tactics, reasonable on the surface, had actually been made in gross ignorance of important rules of law."

See also, Waltz, "Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 N.W.U.L.Rev. 289 (1964); Finer, "Ineffective Assistance of Counsel", 58 Cornell Law Rev. 1077 (1973); Comment: "Assuring the Right to an Adequately Prepared Defense", 65 J. of Crim.L. and Criminology 302 (1974).

Nevertheless, after reviewing the record in this instant case, I am of the opinion that it fails to disclose any valid basis for the assertion that the appellant was deprived of his constitutional rights by ineffective counsel at his trial in the lower court. Thus, the judgment of conviction should be affirmed.

West v. Louisiana, 478 F.2d 1026 (5th Cir. 1973); Scott v. United States, 138 U.S. App.D.C. 339, 427 F.2d 609 (1970). See, Steward v. People, 498 P.2d 933 (Colo.1972, where Colorado, although mentioning the "bad faith, sham, or farcical representation [tests]" relied upon American Bar Association Standards of Justice relating to The Defense Function in affirming a judgment of conviction). People v. Moya, 504 P.2d 352 (Colo.1972) affirmed an order for new trial by reason of ineffective representation by counsel, apparently discarding the "bad faith, sham, or farcical representation [tests]"; People v. White, 514 P.2d 69 (Colo.1973), reaffirmed holdings of Steward v. People and People v. Moya, supra, and again reiterated the "sham, facade and mockery of justice standard".