**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36938**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2010 Unpublished Opinion No. 642** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: September 13, 2010** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SCOTT A. MAYNARD,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Cheri C. Copsey, District Judge; Hon. James Cawthon, Magistrate.

Judgment of conviction for domestic battery in the presence of a child, <u>affirmed</u>.

Randall S. Barnum of Capitol Law Group, PLLC, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Chief Judge

Scott A. Maynard appeals from the district court's order affirming Maynard's misdemeanor conviction for domestic battery in the presence of a child.  Maynard contends that he was entitled to a judgment of acquittal or, alternatively, that errors by the magistrate court in evidentiary rulings require that he receive a new trial.

**I.**

**BACKGROUND**

Maynard was charged with misdemeanor domestic battery in the presence of a child, Idaho Code §§ 18-903, 18-918(3)(b) and (4), after an alleged altercation with Jessica Homan, the mother of one of his children, M.M.  At Maynard's trial he and Homan both testified that on May 13, 2008, they got into a heated argument at Maynard's house while M.M. was present. Homan testified that Maynard grabbed her and shoved her into a wall, and Maynard denied Homan's allegations.  Homan's testimony was supported by that of an officer who saw bruises on Homan's arms and by pictures the officer took purporting to show those bruises.

1

Attempting to demonstrate Homan's motivation to lie in order to get Maynard in trouble, defense counsel cross-examined her concerning a term in the parties' custody agreement. The cross-examination elicited Homan's acknowledgement that the custody agreement provided for an increase in Maynard's visitation rights if he successfully completed a probationary period, which would have expired shortly after this incident occurred. She also admitted that when she called the police, she was aware that a criminal violation by Maynard would constitute a violation of the probation terms in the custody order. After this cross-examination the prosecutor, outside the presence of the jury, requested the court's permission to inquire on re-direct into the terms of the custody probation and whether Homan believed on the day of the incident that Maynard had already violated one specific term--that he must maintain his employment at an Albertsons grocery store. The prosecutor sought to show that Homan believed Maynard's visitation would not have increased upon the expiration of the probation even before the present charge was leveled against him. The court allowed the prosecutor to question Homan about these matters. Homan then testified to the probation terms and her understanding that Maynard had already violated the custody probation by losing his job at Albertsons. At the close of the State's case Maynard moved for a judgment of acquittal, which the district court denied.

Testifying in defense, Maynard said that he had been convicted of a felony in 1997 but that he was "not the same person [he] used to be" and that although he may have lied to a jury before, he had changed and so would not lie to the jury now. The court thereafter granted the State's request to inquire into Maynard's criminal convictions after 1997 to impeach his testimony that he was a changed man since his felony conviction. At Maynard's request, the court permitted him to reopen direct examination in light of the court's ruling so that he could be the first to introduce those convictions to the jury. Maynard then testified to being convicted of twenty-two misdemeanors between his felony conviction in 1997 and the time of trial. The jury returned a guilty verdict. Maynard appealed to the district court, which affirmed the judgment of conviction.

Maynard now further appeals, contending that the magistrate court erred in admitting evidence concerning the parties' child custody order, erred in admitting Maynard's criminal convictions subsequent to his 1997 felony, and erred in denying Maynard's motion for a judgment of acquittal.

DISCUSSION

**A. Custody Probation Evidence**

In permitting Homan to describe the terms of the probationary period in the parties' custody agreement and testify as to why Homan believed on the day of the incident that Maynard was already in violation of those terms, the magistrate directed that Homan was to testify only to the probation terms and her understanding as to whether he had already violated the employment term prior to the charged offense. The actual probation provision in the agreement stated that "in the event [Maynard] maintains his current employment with Albertsons, is charged with no crimes or probation violations, provided that [Maynard] is not held in contempt . . . for 135 days," Maynard would be entitled to additional visitation with M.M. When testifying, Homan described the terms as follows: "He had to maintain full employment at Albertsons the entire time . . . . [I]f there were any *new* crimes, if there were any probation violations, or any contempt of courts, then he was in violation of that order."

Maynard argues that this testimony was evidence of past misconduct by Maynard that should have been excluded under Idaho Rule of Evidence 404(b), or under the I.R.E. 403 balancing test because its probative value was outweighed by its prejudicial impact. He contends that Homan's reference to "new" crimes, probation violations, and contempts of court implied that he had past crimes, past probation violations, and past contempts of court, and was generally a bad and irresponsible person.

We do not address the merits of Maynard's contentions because they have not been preserved for appeal. Prior to Homan's testimony, Maynard did not object to the State eliciting information regarding the terms of the custody probation; he made only a foundation objection to testimony on Homan's belief that Maynard had violated the terms by losing his job. It is well settled that, in the absence of fundamental error, this Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Timmons*, 145 Idaho 279, 290, 178 P.3d 644, 655 (Ct. App. 2007); *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct. App. 1997). Furthermore, the district court ruled only that Homan could testify as to the probation terms listed in the custody order, which did not specify "new crimes" but rather just "crimes." Homan's inclusion of the word "new" was not due to any action of the court or the prosecutor, and Maynard did not request that the testimony be stricken, so there was no court

ruling to challenge on appeal. We will not review a claim of error on appeal unless the record discloses an adverse ruling forming the basis for an assignment of error. *State v. Yakovac*, 145 Idaho 437, 442, 180 P.3d 476, 481 (2008).

**B.    Introduction of Criminal Convictions Since 1997**

Maynard next contends that the State introduced his criminal history for purposes of impeachment, and therefore this evidence should have been limited to that allowed by I.R.E. 609(a), which does not include misdemeanors.

For the purpose of attacking the general credibility of a witness, I.R.E. 609(a) allows for the admission of evidence of a witness's prior felony convictions with certain limitations. That was not the purpose of the evidence proffered here, however. The prosecution did not seek to use the evidence of Maynard's criminal history as a general attack on his credibility but, rather, to impeach his specific statements on direct examination that he was "not the same person [he] used to be" and that although he may have lied to a jury in the past, he had changed and would not lie now. Where a witness on direct makes statements that are contradictory to facts within the knowledge of the opposing party, cross-examination concerning those facts is proper. *State v. McClellan*, 96 Idaho 569, 571, 532 P.2d 574, 576 (1975), *overruled on other grounds by State v. Tucker*, 97 Idaho 4, 8, 539 P.2d 556, 560 (1975); *State v. Baruth*, 107 Idaho 651, 655-56, 691 P.2d 1266, 1270-71 (Ct. App. 1984).

In *McClellan*, the defendant testified that he had been convicted of three prior felonies but had no "problems with the law" since his marriage. *McClellan*, 96 Idaho at 571, 532 P.2d at 576. On cross-examination the prosecutor inquired into two arrests of the defendant subsequent to his marriage, though neither had resulted in a conviction. *Id*. Our Supreme Court held this cross-examination was proper in scope as it "went to the truth of statements made by the appellant during direct examination." Similarly in *Baruth*, the defendant testified that he had driven to a particular location to gamble. *Baruth*, 107 Idaho at 655, 691 P.2d at 1270. On cross-examination, the prosecution inquired into the contents of a lunch bucket found in the defendant's car that tended to show his purpose in driving to that location was to commit robbery. *Id*. at 655-56, 691 P.2d at 1270-71. This Court held that this was proper cross-examination as the contents of the lunch bucket did tend to impeach the defendant's testimony as to his purpose. *Id*. at 656, 691 P.2d at 1271. We stated that a defendant who chooses to testify in his own defense "is subject to the same rules applicable to other witnesses and may be cross-

4

examined in regard to all maters to which he has testified on his direct examination." *Id*. at 655, 691 P.2d at 1270 (quoting *State v. Hargraves*, 62 Idaho 8, 18, 107 P.2d 854, 858 (1940)).

Thus, Rule 609(a) was inapplicable in this case because the State was not attacking Maynard's general credibility, but was seeking to discredit his particular assertion that he was now a law-abiding citizen. The evidence that Maynard had committed twenty-two misdemeanors after he claimed to have "changed," was within the scope of proper cross-examination.

## C.     Denial of Maynard's Motion for Judgment of Acquittal

Maynard argues that the State's only evidence to prove the elements of the crime--Homan's testimony, the officer's testimony, and a photograph depicting red marks on her arms--was so insubstantial that the court erred in denying his motion for a judgment of acquittal.

Idaho Criminal Rule 29 requires the entry of a judgment of acquittal on a defendant's motion if the evidence is insufficient to sustain a conviction. Thus, the test on appellate review is whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995); *State v. Chacon*, 145 Idaho 814, 818, 186 P.3d 670, 674 (Ct. App. 2008). Evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *Chacon*, 145 Idaho at 818, 186 P.3d at 674; *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101. Rather, we consider the evidence in the light most favorable to the prosecution. *Id*.

The elements of domestic battery in the presence of a child include the actual, intentional, and unlawful touching or striking of a household member against his or her will in the presence of a child. I.C. §§ 18-903, 18-918(3)(b) and (4). Through the testimony of Homan and a police officer, the jury heard that Maynard grabbed Homan's arm twice with sufficient force to leave marks, and pushed her against the wall while their child, M.M., was in the room. The officer observed red marks on Homan's arms that were consistent with fingerprints. There were also photos of the red marks on Homan's arms, although it appears the marks were not easy to see in the photos. Homan's account of the incident and the officer's observations constitute substantial

evidence from which the jury reasonably could find that the prosecution met its burden of proof on all the elements of the charged offense. Therefore, the district court did not err in denying Maynard's motion for judgment of acquittal at the close of the prosecution's case-in-chief.

## III.

## CONCLUSION

Maynard has shown no error with regard to Homan's testimony concerning her understanding of the status of the parties' custody agreement, the court's ruling that Maynard's twenty-two misdemeanor convictions could be referenced, or the court's denial of his motion for judgment of acquittal. Therefore, we affirm the district court's order affirming Maynard's judgment of conviction.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**