648 P.2d 203

STATE of Idaho, Plaintiff-Respondent,

v.

Terry Dale OLIN, Defendant-Appellant.

No. 13080.

Supreme Court of Idaho.

July 9, 1982.

Robert E. Kinney, Orofino, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BAKES, Chief Justice.

On October 26, 1977, the Orofino police discovered the body of Ralph Peterson at his residence in Orofino, Idaho. Peterson had been stabbed to death, and a few articles of personal property, including an automobile, had been taken from the residence. That same day, the Clearwater County sheriff learned that the deceased's automobile was in the possession of Binkley Auto Sales in Lewiston, Idaho, and that the car had been traded to Binkley's by the defendant Terry Olin on October 14, 1977.

Shortly following these discoveries, Olin surrendered to the Kootenai County sheriff's office, having been informed by relatives that the police were looking for him. Olin told an investigating officer, and later testified at trial, that, immediately preceding the killing, Peterson had forced the defendant to commit an unnatural sex act at knifepoint, and that he had then killed Peterson to defend himself from a further attempted sexual assault. Olin indicated that he then took the automobile and other property only after deciding that the police would never believe his account of the incident.

In November, 1977, the defendant was charged by information with the crimes of grand larceny and first degree murder. Subsequently, he filed a notice of intent to rely upon the defense of mental disease or defect. Pursuant to this notice and defendant's motion, the court ordered that the director of Health and Welfare appoint two psychiatrists to conduct a mental evaluation of the defendant and to submit a report. Olin was then sent to the Idaho Security Medical Facility for that purpose. An evaluation was conducted, and a report prepared which indicated that the defendant had a history of family and physical problems which inhibited his ability to learn. His verbal skills tested in the dull-normal range, I.Q. 79, but mental performance tested at high normal, I.Q. 110. The report concluded that the defendant was competent to stand trial. However, the report failed to specifically state an opinion as to Olin's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law at the time of the crime, as required under I.C. § 18–211(3)(d). There was also some question as to whether the defendant had been adequately examined by two psychiatrists as required by the trial court's order. Consequently, after receiving a copy of the evaluation, the defendant filed a motion to contest the findings contained therein, and to exclude the report as not being in compliance with the court's order.

A hearing was held on April 3, 1978, and Dr. Azar, a psychiatrist, and two psychologists employed by the Idaho Security Medical Facility testified at the hearing. All three of the witnesses had participated in the testing and evaluation of the defendant, and there was testimony to the effect that a second psychiatrist, Estess, had also participated in the evaluation. At the hearing, Dr. Azar testified that although the opinion concerning the defendant's mental capacity at the time the crime was committed had been inadvertently omitted from the report, his conclusion was that the defendant in fact was able to appreciate the wrongfulness of his conduct and conform his conduct to the requirements of the law at the time of the incident involved. While criticizing a number of irregularities in the evaluation of the defendant, the court determined that the defendant had received an adequate evaluation and that the testimony of Dr. Azar cured the deficiencies in the evaluation report.

Subsequently, the defendant submitted a motion for the allowance of public funds to obtain an additional psychiatric evaluation. This motion was denied. Next, the defendant moved for the allowance of public funds to obtain a transcript of the mental evaluation hearing. Counsel for the defense argued that the transcript was essential for

preparation of the defense of mental disease or defect; however, this motion was also denied. At trial the defendant did not further pursue the defense of mental disease or defect. The defendant was convicted of both grand larceny and first degree murder. The defendant appeals only his conviction for first degree murder.

I

It is first asserted on appeal that the trial court erred in denying the defendant's motion for the allowance of public funds to obtain another psychiatric evaluation, and to also obtain a transcript of the hearing contesting the findings of the mental evaluation. The defendant argues that the provision of public funds for these purposes is required by I.C. § 19–852(a), as well as by the due process and equal protection clauses of the fourteenth amendment.

■■■ I.C. § 19–852(a) provided the following at the time of the defendant's trial: "19–852. RIGHT TO COUNSEL OF NEEDY PERSON—REPRESENTATION AT ALL STAGES OF CRIMINAL AND COMMITMENT PROCEEDINGS—PAYMENT.—(a) A needy person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled:
(1) to be represented by an attorney to the same extent as a person having his own counsel is so entitled; and
(2) to be provided with the necessary services and facilities of representation (including investigation and other preparation). The attorney, services, and facilities and the court costs shall be provided at public expense to the extent that the person is, at the time the court determines need, unable to provide for their payment."
The statute recognizes that there are cases where a criminal defendant's right to a fair trial may be jeopardized unless there is access not only to an attorney, but also to certain specialized aid in the preparation of a defense. *State v. Powers*, 96 Idaho 833,

838, 537 P.2d 1369, 1374 (1975). Included within the scope of I.C. § 19–852(a) are the fourteenth amendment requirements of due process and equal protection as they apply to indigent defendants. In *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), the United States Supreme Court made it clear that "state[s] must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." It is equally evident that if a defendant is denied access to the basic tools of an adequate defense, then he has also been denied his due process right of a fair trial. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). However, what constitutes the basic tools or necessary services of an adequate defense has not been clearly defined, *Britt v. North Carolina, supra; State v. Coronado*, 98 Idaho 421, 423, 565 P.2d 1378, 1380 (1977), and may indeed vary from case to case. *See State v. Powers*, 96 Idaho at 838, 537 P.2d at 1374. Consequently, in order to determine under I.C. § 19–852(a) whether the requested services in the present case were *necessary* in order to provide the defendant with an adequate defense, we must review the requests individually.

A. Psychiatric examination.

■■■ The constitution does not require a state to provide expert or investigative assistance merely because a defendant requests it. *United States ex rel. Smith v. Baldi*, 344 U.S. 561, 568, 73 S.Ct. 391, 394, 97 L.Ed. 549 (1953); *Watson v. Patterson*, 358 F.2d 297, 298 (10th Cir. 1966), *cert. denied* 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966). Rather, a defendant's request for expert or investigative services should be reviewed in light of all the circumstances and be measured against the standard of "fundamental fairness" embodied in the due process clause. *Watson v. Patterson, supra; State v. Lee*, 221 Kan. 109, 558 P.2d 1096, 1101 (1976).

■■ In accord with these principles, we have stated in applying I.C. § 19–852(a) to expert and investigative services that

"[f]inancial assistance is not automatically mandatory, but rather depends upon [the] needs of the defendant as revealed by the facts and circumstances of each case. Before authorizing the expenditure of public funds for a particular purpose in an indigent's defense, the trial court must determine whether the funds are necessary in the interest of justice." *State v. Powers,* 96 Idaho at 838, 537 P.2d at 1374.

*See Mason v. Arizona,* 504 F.2d 1345, 1352 (9th Cir. 1974) *cert. denied* 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975). It is thus incumbent upon the trial court to inquire into the needs of the defendant and the circumstances of the case, and then make a determination of whether an adequate defense will be available to the defendant without the requested expert or investigative aid. If the answer is in the negative, then the services are necessary and must be provided by the state. Such a review necessarily involves the exercise of the sound discretion of the trial court. *Griffin v. State,* 415 N.E.2d 60 (Ind.1981); *State v. Burnett,* 222 Kan. 162, 563 P.2d 451, 454 (1977); *see* Annot., 34 A.L.R.3d 1256, 1269–72 (1970); *cf. State v. Kerrigan,* 98 Idaho 701, 571 P.2d 762 (1977) (preliminary matter of application for bail addressed to the sound discretion of the court). Consequently, a denial of a request for expert or investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case.

■ In the case at bar, the defendant requested financial assistance to obtain another mental examination by a psychiatrist. Most significant is that this request was in addition to the psychiatric examination mandated and obtained under I.C. § 18–211.[1] In fact, the trial court had ordered that the defendant be examined by two psychiatrists, rather than just one as required under I.C. § 18–211.[2] While there was some question below as to the adequacy of one of these examinations and the procedures involved, the trial court determined, after a hearing, that notwithstanding some apparent irregularities in preparing and filing the evaluation report, the defendant had received an examination sufficient to meet the requirements of I.C. § 18–211 and the trial court's order. The correctness of that ruling is not specifically raised as an issue on appeal, and we see nothing in the record to merit disturbing the trial court's ruling on that matter. Consequently, since the defendant had already received an adequate examination at state expense, we hold that the trial court did not err in exercising its discretion to deny the defendant funds for an additional psychiatric examination. *Accord: State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023, 1053–54 (1980); *Leggett v. State,* 244 Ga. 226, 259 S.E.2d 476 (1979); *Griffin v. State,* 415 N.E.2d 60 (Ind.1981); *State v. Burnett,* 222 Kan. 162, 563 P.2d 451 (1977); *Justus v. Commonwealth,* 220 Va. 971, 266 S.E.2d 87 (1980); *see United States ex rel. Smith v. Baldi,* 344 U.S. 561, 568, 73 S.Ct. 391, 394, 97 L.Ed. 549

---

1. "18–211. EXAMINATION OF DEFENDANT—APPOINTMENT OF PSYCHIATRISTS AND LICENSED PSYCHOLOGISTS—HOSPITALIZATION—REPORT.—(1) Whenever the defendant has filed a notice of intention to rely on the defense of mental disease or defect excluding responsibility, or there is reason to doubt his fitness to proceed as set forth in this section, or reason to believe that mental disease or defect of the defendant will otherwise become an issue in the cause, the court shall appoint at least one (1) qualified psychiatrist or licensed psychologist or shall request the director of the department of health and welfare to designate at least one (1) qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant. The court may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination for a period of not exceeding sixty (60) days or such longer period as the court determines to be necessary for the purpose and may direct that a qualified psychiatrist or licensed psychologist retained by the defendant be permitted to witness and participate in the examination.
. . . . "

2. As noted previously, the examinations also involved testing and evaluations performed by two psychologists.

(1953); *Satterfield v. Zahradnick*, 572 F.2d 443 (4th Cir. 1978), *cert. denied* 436 U.S. 920, 98 S.Ct. 2270, 56 L.Ed.2d 762 (1978); *McGarty v. O'Brien*, 188 F.2d 151 (1st Cir. 1951), *cert. denied* 339 U.S. 966, 70 S.Ct. 1002, 94 L.Ed. 1375 (1951); *see also* Annot., 34 A.L.R.3d 1256, 1275–86 (1970 & supp.).

▮ In the same context the defendant also claims error in the court's denial of his request for an independent psychiatric examination based upon I.C. § 18–213(2) and the equal protection clause. I.C. § 18–213(2) states as follows:

"18–213. ACQUITTAL ON GROUND OF MENTAL ILLNESS—EXAMINATION BY PSYCHIATRIST AND LICENSED PSYCHOLOGISTS OF DEFENDANT'S CHOICE—PSYCHIATRISTS AND LICENSED PSYCHOLOGISTS AS WITNESSES.— . . .

"(2) When, notwithstanding the report filed pursuant to section 18–211, Idaho Code, the defendant wishes to be examined by a qualified psychiatrist or other expert of his own choice, such examiner shall be permitted to have reasonable access to the defendant for the purpose of such examination."

It is argued that I.C. § 18–213(2) grants a defendant the right to be examined by a psychiatrist of his own choice, and that that right should not be denied simply because a defendant is unable to afford a private psychiatrist. However, as discussed previously, the equal protection clause only requires a state to provide a defendant with "the *basic tools* of an adequate defense or appeal, when those tools are available for a price to others." *Britt v. North Carolina*, 404 U.S. at 227, 92 S.Ct. at 433. It does not require a state to provide a defendant with anything that he might desire for his defense merely because it may be obtained by a

more financially solvent defendant. The psychiatric examinations available to a defendant under I.C. §§ 18–211 and 19–852(a) are sufficient to enable him to evaluate an asserted insanity defense, and are likewise sufficient to satisfy the constitutional demands of fundamental fairness. Consequently, we find that I.C. § 18–213(2) does not support the defendant's claim of entitlement to state funds for the procurement of an additional psychiatric examination.

B. Transcript.

While the need for expert and investigative assistance by indigent defendants may vary greatly from case to case, the same does not necessarily hold true in the instance of indigent defendants' requests for transcripts.[3] It can ordinarily be assumed that a transcript of a prior proceeding arising out of the same prosecution will be valuable to a defendant "in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Britt v. North Carolina*, 404 U.S. at 228, 92 S.Ct. at 434.

Nevertheless, the fact that the *Britt* court stated that the value of a transcript to a defendant may *"ordinarily* be assumed," indicates that there may arise certain cases in which such an assumption is not warranted by the particular facts and circumstances involved. The case at bar presents such an exception. The basis for assuming that a transcript of a prior proceeding is valuable to a defendant in preparing his defense is, as stated previously, that the transcript may be used for discovery or impeachment purposes. *Britt v. North Carolina*, 404 U.S. at 228, 92 S.Ct. at 434. In the present case, the only purpose of the April 3, 1978, hearing was to probe the work and conclusions of the evaluating

---

**3.** In *State v. Coronado*, 98 Idaho 421, 423, 565 P.2d 1378, 1380 (1977), we held that "a transcript of the preliminary hearing, when alleged to be necessary to the defense, must *certainly be included* among those services and facilities provided by the state under [I.C. § 19–852]." (Emphasis added.) Such an absolute rule in regard to preliminary hearing transcripts was made due to the requirements of I.C.R. 5.1 as it

existed at that time. That same rule was also applicable to the present case. However, I.C.R. 5.1 did not address the provision of transcripts of proceedings of the type involved in the present case. Consequently, rules of a more general nature, as discussed below, form the basis of the present opinion. *But see* I.C.R. 5.2 (effective as amended July 1, 1981).

psychiatrists and psychologists. The testimony adduced at the hearing would have no relevance at trial unless the work and conclusions of the psychiatrists and psychologists were specifically placed at issue at trial. The record discloses that the prosecution did not call and never intended to call any of the psychiatrists or psychologists to testify at trial. Their names are not contained on the state's list of witnesses, and there is nothing else in the record to indicate that they would be called to testify at trial.

Appellant's brief on appeal does not point out how the transcript of the testimony taken at the competency hearing would have been of any use or value in presenting his defense, but merely argues the equal protection claim that "had appellant the financial means to do so the transcript could have been obtained," and therefore, "the state cannot deny to an indigent defendant those 'basic tools of an adequate defense or appeal, when those tools are available for a price to others.'" In making the motion for the transcript, trial counsel stated, "It is essential that defendant have a transcript of the April 3, 1978, hearing insofar as the testimony adduced thereat forms the very root and essence of the foundation for the psychiatric and psychological opinions which defendant must utilize at trial." However, the transcript of that hearing, which is now a part of the record on appeal, shows that the only expert opinion rendered at the April 3, 1978, hearing was by Dr. Azar, the psychiatrist who had submitted the written report in association with Dr. Estess, another psychiatrist.[4] Dr. Azar testified that in his professional opinion the defendant had both the capacity to understand the wrongfulness of his conduct and the ability to conform his conduct to the requirements of the law at the time the victim was killed. Dr. Azar testified that he had arrived at that opinion after consulting with the psychologists who had given and evaluated the psychological tests, and after consulting with Dr. Estess and other medical personnel. Although extensively cross examined, Dr. Azar's opinion was unqualified. Thus, in the absence of a showing that Dr. Azar subsequently changed his opinion, a transcript of the mental competency hearing would not have provided "the foundation for the psychiatric and psychological opinions which defendant must utilize at trial."

A review of the numerous recorded cases from other jurisdictions requiring the state to provide a defendant with a transcript of a prior proceeding in aid of his defense discloses that those prior proceedings involved mistrials, preliminary hearings and suppression hearings, which by their nature concerned the examination of state witnesses against the defendant who were at least reasonably certain to appear at trial in the prosecution's behalf. We have found no cases and are cited to none addressing the type of prior proceeding with which we are concerned in this case. Here, there is nothing in the record to indicate that the prosecution intended to call the psychiatrists or psychologists as witnesses or that the witnesses had any testimony favorable to the defense so that the defendant might want to call them. Had the defendant intended for some reason to call them as hostile witnesses, such should have been made known to the trial court. Absent communication of such an intent, there was little reason for the court to consider the transcript of the prior proceeding to have any relevance at trial. Consequently, the factors which support the assumption that ordinarily a transcript of a prior proceeding is valuable to a defendant are lacking in the present case. We therefore conclude that the defendant was not prejudiced by the court's denial of his request, and that the trial court did not com-

4. Dr. Azar and Dr. Estess were private psychiatrists practicing in Boise, Idaho, who, by agreement with the State of Idaho, provided psychiatric services on an individual case basis. Neither were employees of the State of Idaho, nor did their agreement call for their providing all necessary psychiatric services for a lump sum.

mit reversible error in denying that request.[5]

## II

## INSTRUCTION

In addition, the defendant claims error in the court's instruction to the jury concerning felony murder. At the time of trial in this case, I.C.R. 30 provided that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto prior to the time that the jury is charged." No objection was made at trial in regard to the instruction; and consequently, we do not address the issue. I.C.R. 30; *State v. Owens*, 101 Idaho 632, 640, 619 P.2d 787, 795 (1980); *State v. McCurdy*, 100 Idaho 683, 686, 603 P.2d 1017, 1020 (1979).

## III

## SUFFICIENCY OF EVIDENCE

The defendant also asserts that the evidence was insufficient to support a conviction of first degree murder. It is argued that the killing was justifiable, or at least sufficiently provoked to bring it within the definition of voluntary manslaughter, and that in any event there was no evidence of either malice aforethought or deliberation and premeditation. The jury, however, was instructed upon the applicable law concerning these points, and from the evidence determined that the defendant was guilty of first degree murder. It is well established that a jury verdict supported by substantial competent evidence will not be disturbed on appeal. *State v. Gerdau*, 96 Idaho 516, 518, 531 P.2d 1161, 1163 (1975). Malice may be implied when the circumstances attending the killing show an abandoned and malignant heart. I.C. § 18–4002. Certainly, the fact that the victim in this case was stabbed 33 times is sufficient to meet that standard and support the jury's conclusion that the killing was done with malice.

Similarly, the elements of deliberation and premeditation need not be proved by direct evidence, but may be inferred from the facts and circumstances of the killing, *State v. Foley*, 95 Idaho 222, 223–24, 506 P.2d 119, 120–21 (1973). Premeditation does not require an appreciable space of time between the intention to kill and the killing; rather, it may be as instantaneous as two successive thoughts of the mind. *Carey v. State*, 91 Idaho 706, 710, 429 P.2d 836, 840 (1967). The facts of the present case show that the victim had a history of being a homosexual, and that the defendant had a great aversion to such people. The defendant at one point in the trial admitted that he had responded to a homosexual advance of another person by chasing and attempting to "knock the soup out of" that other person with a crowbar. The defendant claims that the victim made a homosexual advance toward him on the night of the killing. Certainly the jury was entitled to reject the defendant's story of self defense in light of his feelings concerning homosexuals, and in view of the fact that the defendant had initially given the police a substantially different account of events than the one he later relied on. "It is within the province of the jury [in a criminal case] to believe or to disbelieve the testimony of any witness, or any portion of such testimony, . . . ." *State v. Cacavas*, 55 Idaho 538, 540, 44 P.2d 1110 (1935). The jury could also have properly considered the fact that the defendant took and sold some of the victim's property as further circumstantial evidence supporting the charge and rebutting the defendant's claim of self defense. We conclude that the evidence was sufficient to support a finding of malice and premeditation, and the matter was therefore properly within the exclusive province of the jury. *State v. Gerdau, supra.*

5. We note, however, that it is probably the more prudent policy to allow the defendant a transcript under such circumstances. A denial will generally lead to a greater expenditure of public funds than would granting the request. As evidenced by this case, an appeal of such a denial will require not only preparation of the transcript originally requested, but will also require the expenditure of additional funds to pay for costs otherwise associated with the appeal.

## IV
### JUROR MISCONDUCT

█ Finally, it is argued that the trial court erred in denying a motion for a new trial based upon one juror's communications with a third party who was a cousin of the defendant. Upon motion of a defendant, a new trial is to be granted "if required in the interests of justice." I.C.R. 34. However, the question of whether the interests of justice require a new trial under the circumstances of a particular case is directed to the sound discretion of the trial court; and the trial court's decision thereon will not be disturbed absent an abuse of that discretion. *State v. Powers*, 100 Idaho 290, 291–2, 596 P.2d 802, 803–4 (1979); *State v. McConville*, 82 Idaho 47, 52, 349 P.2d 114, 116 (1960).

█ In the present case, the court held a two hour hearing on the matter. The record discloses that the particular conversation lasted from fifteen to twenty minutes; however, only two or three minutes were spent discussing the defendant. The juror and the defendant's cousin were good friends, and the discussion took place while the cousin was repairing a flat tire for the juror. The relevant two to three minutes of conversation concerned the unfortunate circumstances surrounding the defendant's upbringing and family life. In denying the motion for a new trial, the judge stated the following:

> "Well, this is a very serious matter.... However, listening to all of the evidence in this matter—it's obvious that a conversation took place. It's also obvious that nothing was said in that conversation that was in any way prejudicial to the defense or to the defendant; that any comments that the juror, Bonner, may have made were sympathetic to the position of the defendant."

In light of the circumstances surrounding the conversation and the fact that the conversation was sympathetic toward the defendant, we cannot say that the trial court abused its discretion in denying a new trial. The conviction is affirmed.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, Justice, dissenting.

Pursuant to defendant's notice of intent to rely upon the defense of mental disease or defect, and pursuant to defendant's motion, the district court ordered that the Director of the Department of Health and Welfare appoint two psychiatrists to conduct an examination of the defendant and to submit a report of examination to the court. I.C. § 18–211. An examination was conducted, and a report of the examination was prepared and submitted to the court. The report of examination included a description of the nature of the examination, the diagnosis of the mental condition of the defendant, and the opinion that the defendant had the capacity to understand the proceedings against him and to assist in his own defense. The report of examination, however, did not include an opinion as to the defendant's capacity to appreciate the wrongfulness of his conduct to or conform his conduct to the requirements of the law at the time of the alleged criminal conduct, as required under I.C. § 18–211(3)(d). Nonetheless, the district court ruled that the omission was corrected by the testimony of Dr. Azar at the hearing contesting the findings of the report of examination. Based upon this ruling, the majority opines that the defendant was not entitled to an independent psychiatric evaluation at state expense because he had already received an examination at state expense which was rendered adequate by the testimony adduced at the hearing.

It is apparent that the intended purpose of granting a motion for an independent psychiatric evaluation is to provide defense counsel, who is ordinarily not an expert in psychiatric matters, the knowledge necessary to determine if a defense of lack of criminal responsibility is tenable, and to help prepare the defense if it is so determined. In this regard, it is to be further observed that an examination which is adequate to determine competency to stand trial and report thereof, and which would primarily involve the issue as to whether

the defendant's mental competency at the time of the examination and at the anticipated time of trial, may not be of the depth and detail necessary to determine the more subtle question as to whether or not a defendant was mentally capable of possessing the requisite intent to commit the charged criminal offense, which would necessitate the examination of the defendant's mental capabilities or processes at an earlier date, i.e., the time of commission of the alleged crime. *United States v. Schultz*, 431 F.2d 907, 912 (8th Cir. 1970). *See generally, United States v. Driscoll*, 399 F.2d 135 (2d Cir. 1968); *Winn v. United States*, 270 F.2d 326 (D.C.Cir.1959); *cert. denied*, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961); *Blunt v. United States*, 244 F.2d 355 (D.C. Cir.1957).

Assuming the district court here was correct in ruling that the testimony of Dr. Azar corrected the deficiency in the report of examination as to the subtler question of the defendant's criminal responsibility at the time of the offense, I am perplexed by the majority's affirmance of the district court's denial of defendant's motion for public funds to obtain a transcript of the hearing at which Dr. Azar's testimony was adduced. The majority in effect is saying to the defendant that you are not entitled to an independent psychiatric evaluation at state expense because the testimony of Dr. Azar addresses the question of your criminal responsibility at the time the charged offense (a question not addressed in the report of examination), but we are not going to let you have a transcript of that testimony to study and assess the strength of Dr. Azar's conclusion. Defense counsel is placed in the untenable position of determining if a defense of insanity is tenable without the benefit of documentation of expert testimony from which to make such a determination, simply because his client is indigent. As stated in the landmark case of *Griffin v. Illinois*, 351 U.S. 12, 17, 19, 76 S.Ct. 585, 589, 590, 100 L.Ed. 891 (1956):

> "In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious dis-criminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'
>
> . . . .
>
> *There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.*" (Emphasis added.)

Drawing upon the foregoing, the United States Supreme Court in *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), made it further clear that "state[s] must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." Thus viewed, the result arrived at today by the majority is contrary to the constitutional guarantees of due process and equal protection.

Accordingly, I respectfully dissent.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

## I.

The majority correctly outlines the inquiry regarding defendant's request for additional psychiatric evaluation as a determination of whether or not the evaluation was necessary in the interest of justice. *State v. Powers*, 96 Idaho 833, 537 P.2d 1369 (1975), *cert. denied*, 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). However, the conclusion that the psychiatric examinations previously conducted on the defendant, I.C. § 18–211, were sufficient to enable defense counsel to evaluate the propriety of an insanity defense is wholly untenable. Equally so is the conclusion that further professional evaluation was unnecessary.

Pursuant to defendant's Notice of Intent to Rely on the Defense of Mental Disease or Defect he was transported to the Idaho Security Medical Facility (ISMF), remain-

ing there for fifty-one days while undergoing psychiatric evaluation. The eventual Psychiatrist and Administrator's Report, however, failed to include a determination of defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the crime—the primary purpose of the examination. A hearing was subsequently conducted in response to defense counsel's challenge to the findings of the psychological evaluation report. Dr. Azar, a part-time consulting psychiatrist at the ISMF, testified in regard to defendant's mental capacity at the time of the offense. Although Judge Maynard concluded that Dr. Azar's testimony adequately rehabilitated the gross shortcomings of the original report, the judge nonetheless felt compelled to administer a stern rebuke wherein his retrospective observations well illustrate the ISMF's inadequate evaluation:

> "We have a serious situation here. The Defendant is charged with the crime of murder in the first degree. Now the Defendant is entitled to all the defenses that are possible under the law. The Defendant sits in this court today presumed to be innocent of this charge until proven guilty. The State of Idaho has an interest in this case. It has the duty to produce evidence before 12 jurors for them to determine whether or not the Defendant is guilty. The State can't perform the duty because a bunch of bureaucrats have stuck their nose in and totally disregarded the statutes, haven't paid any attention to the orders of the Court, sent a report up here not authorized by the psychiatrist who is the only one empowered under the law to do it, ordered—examined by two psychiatrists. No mention was made in any report of the second psychiatrist, no report came back. This matter was set down—the Defendant was ordered upon his notice to be examined on the 21st day of December, 1977, and shortly thereafter was transported to the Security Unit at the Idaho State Penitentiary. On the 2nd day of—or the 25th day of February, Doctor—or Mr. Clump [staff psychologist at ISMF] made

a report, not to this Court but to the administrator of the hospital. Now that was some 66 days after the date of the filing of this notice. Nine days thereafter, on the 6th of March, a report was prepared by Dr. Sanford, [administrator of the ISMF] not the psychiatrist, in response to the order. That was 75 days after the order was made. This letter was not mailed—this report was not mailed, the postmark shows, until the 13th day of March, 82 days later.

> "Now I don't know what you people are running down there—totally disregard[ing] the law. Dr. Sanford, you know what the requirements of the law are. You know you are not empowered to make these reports, only a psychiatrist is. You are taking too much upon yourself and it is going to stop. Now Dr. Azar's testimony here clears up the matter of the report and makes an adequate report. We still do not have the report of Dr. Estes [consulting psychiatrist to the ISMF]. If that is not in my hands by the end of this week, there is going to be another hearing and Dr. Estes is going to be here. Now I am not going to subject the taxpayers of this county to the payments of any costs for you people. That is a matter for the Board of Corrections. You made this mistake by totally ignoring the statutes and the order of this Court. I wish you were in a position where I could find you in contempt because I would. Now you are going to straighten out and mend your ways or I am going to go to the Governor and have a good hard look at how you run that institution."

Being in complete agreement with Judge Maynard's pungent comments, nevertheless, I regret my inability to fathom his reasons for denying defendant further psychiatric examination as requested. If, as the majority states, the "needs of the defendant and the circumstances of the case" (whatever that may mean in the eyes of the majority) control the question of "whether an adequate defense would be available to the defendant without the requested expert or

investigative aid," then certainly an additional mental evaluation of the defendant, presumably characterized by more professional conduct, was in order. Indeed, having observed the slipshod manner in which his client was examined, defense counsel had no alternative but to request an additional evaluation. An additional examination was not only necessary, but mandated. While I understand the influencing factor of economics to which district judges are no doubt susceptible, I am appalled that this Court on leisurely reflection affirms the district court order denying funds to obtain further psychiatric evaluation, and declares that the requirements of "due process of the law" have been fulfilled.

## II.

Following defense counsel's first setback, a motion was made by him for funds to obtain a transcript of the mental evaluation hearing. That motion was likewise denied.[1] On appeal this Court, relying on *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), rather summarily affirms that denial. It is not clear that the holding in *Britt* is understood by the Court.

The *Britt* opinion recognized *two* factors relevant to the determination of an indigent defendant's need for transcript: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." *Id.* at 228, 92 S.Ct. at 434. The majority opinion narrowly analyzes the first element to the limited extent necessary for support of its position, and conveniently by-passes discussion of the second element.

In *Britt*, the United States Supreme Court noted that which appears as the obvious even to attorneys of limited criminal practice experience:

"[E]ven in the absence of specific allegations it can ordinarily be assumed that a transcript of the prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses." *Id.* at 229, 92 S.Ct. at 434.

Concluding that "[t]he testimony adduced at the hearing would have no relevance at trial" and that "[a]ppellant's brief on appeal does not point out how the transcript of the testimony taken at the competency hearing would have been of any use or value in presenting his defense," the majority today overlooks *Britt's* clear holding that no showing of the transcript's value to the defendant is necessary:

"We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case." 404 U.S. at 229, 92 S.Ct. at 434.

Further, the majority completely ignores the second element for determining need outlined in the *Britt* decision, *i.e.*, the availability of alternative devices that would provide an adequate substitute for the transcript. In his Affidavit in Support of Motion for Reporter's Transcript, defense counsel requested the transcript because the testimony at the mental evaluation hearing "forms the very root and essence of the foundation for the psychiatric and psychological opinions which defendant must utilize at trial." The only feasible "alternative device" to the testimony, therefore, would be another expert opinion regarding the defendant's mental condition. That particular relief, however, was effectively foreclosed by the district court's earlier denial

1. It is a true anomaly of justice, perhaps the anomaly of all time, that the transcript of the mental evaluation hearing originally denied by the district court was subsequently made available for purposes of this appeal. Ironically, if the transcript had been provided to the defendant at the time it was initially requested, the financial burden of appeal upon the county and state might have been avoided altogether, or, at the least substantially reduced.

of public funds for hiring another psychiatrist in order to examine the defendant. As noted in dissent by Justice McFadden, this Catch-22 situation forces defense counsel to predetermine for himself the effectiveness or futility of his client's insanity defense without the requisite tools—his own expert, and a transcript. If he proceeds without either or both, and fails, he faces a not unlikely later appellate ruling that he has not demonstrated that his defense, though prosecuted with commendable zeal, was not hampered, and simply did not gain the nod from the jury. Surely this is a Catch-22 situation, and one from which an attorney can only extricate himself in the first place by not getting caught in the Catch. Wiser trial counsel, given adverse decisions clearly in error, will make their objections and hope for relief at the hands of an enlightened appellate court.

Any suggestion that defense counsel's presence at the hearing at which the testimony was given is a sufficient alternative to the transcript itself not only borders on the absurd, but has been precluded by the *Britt* decision. "We have repeatedly rejected the suggestion that ... counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial." 404 U.S. at 230, 92 S.Ct. at 435. Indeed, as a footnote to that finding the Court noted that "[w]hile trial notes might well provide an adequate substitute for a transcript, the failure to make such notes does not bar an indigent prisoner from claiming the right to a free transcript." *Id.* fn. 4, 92 S.Ct. at fn. 4.

In *State v. Coronado*, 98 Idaho 421, 565 P.2d 1378 (1977), a unanimous Court summarily upheld an indigent defendant's right to receive a transcript of his preliminary hearing based upon I.C. § 19–852 and I.C.R. 5.1.[2] Since the *Coronado* case the Idaho Supreme Court has revised the applicable

Idaho Criminal Rule several times. The current rule addressing transcripts reads in part:

"*Rule 5.2* Transcript of hearings—Copies for parties.—(a) Transcript of proceedings. On timely motion to the district court by either the prosecuting attorney or the defendant or his attorney the court shall order a typewritten transcript and copies of exhibits or affidavits to be made for such party. The cost for the preparation of such a transcript on motion of the defendant shall be at the cost of the defendant, unless the court finds the defendant to be an indigent or needy person and orders the preparation of the transcript at county expense in the same manner as a transcript on appeal. *Transcripts may be requested of any hearing or proceeding* before the court including the following:

"(1) The record of any probable cause hearing for the issuance of a complaint, a warrant for arrest or a search warrant.

"(2) The record of any preliminary hearing.

"(3) The record of any hearing on a motion to suppress evidence." (Emphasis added.)

The language of the rule does not specify or even intimate that transcripts of hearings other than those enumerated in (1), (2), and (3) are not going to be available on motion by the prosecutor or by defense counsel. Quite the contrary, it provides just the opposite—that transcripts may be requested of "any hearing or proceeding before the court including the following ...." The enumeration of three categories does not come close to closing the door on other hearings, and certainly not on a hearing as important as the one at which a defendant's mental evaluation is discussed and his state

---

2. I.C. § 19–852, *ante* p. 4. I.C.R. 5.1 in pertinent part read:

"*Rule 5.1.* Preliminary examination—...

. . . .

"(d) Transcript of Proceedings....

. . . .

"(4) In the event that the defendant is indigent and cannot pay for the cost of such transcript or copy of record made by a recording device upon a proper showing the district court, an order shall be entered that the transcript shall be prepared at the cost of the county."

of mind determined. It is for all intents and purposes as important as the preliminary hearing, and in fact its outcome may do away with any preliminary hearing. In that manner the hearing bears similarity to a suppression hearing in that if defendant is found of unsound mind within the requirements of the statute, *all* further evidence is suppressed.

It is difficult to see how the Court's opinion today can be said to be in conformity with the provisions of I.C. § 19–852(a)(2) mandating that an indigent defendant is "to be provided with the necessary services and facilities of representation (including investigation and other preparation)." It was this statutory provision which required our holding in the *Coronado* case, of which case our Criminal Code's annotator concisely and accurately commented as follows:

"While the parameters of the right of a criminal defendant under subdivision (2) to pretrial services and facilities is not particularly defined, a transcript of the preliminary hearing, when alleged to be necessary to the defense, must certainly be included among those services and facilities provided by the state under the statute."

Equally as compelling in coming to a correct determination in this case are the requirements of effective assistance of counsel of the Idaho and United States Constitutions.

"It is our opinion that the best enunciation of defense counsel's obligation is found in *United States v. DeCoster*, 159 U.S.App.D.C. 326, 487 F.2d 1197, 1202 (1973)—'a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate'. We adopt this standard." *State v. Tucker*, 97 Idaho 4, 8, 539 P.2d 556, 560 (1975).

It is to deal in pure sophistry to say that Olin's defense counsel could be the effective advocate he was endeavoring to be when he was denied the right to have a psychiatrist at his elbow both in preparing for trial, and at trial. It would be a remarkably strange attorney who would endeavor to pierce the testimony of a psychiatrist without the aid of at least one of his own choosing—which would be equally true in attempting the analysis of those who testified at the mental evaluation hearing, especially absent a transcript. (Had the hearing been in magistrate court, at the least there would have been a tape available.)

In this case, I.C. § 19–852(a)(1) comes into play, and controls the issue of effective assistance of counsel. This section, with its requirement that an indigent defendant is entitled "to be represented by an attorney to the same extent as a person having his own counsel is so entitled," clearly removes from the controversy the question of need for both a transcript and at least one psychiatrist. Without regard for the rule that the cumulative number of witnesses does not *necessarily* control the decision of a jury, without doubt most defense attorneys will want as many psychiatrists as the prosecutor has—and certainly would not go to trial when mental condition is an issue without at least one. The proposition is so apparent as to need no further discussion. One may well accept the legislature's directive, and if it be that a non-indigent defendant would have a psychiatrist to aid his counsel, it is clear that an indigent defendant is entitled to no less—being the law of Idaho and the requirement of both constitutions—if this also be needed. Anything less is flagrant discrimination. The record which was made in this case adequately establishes the merit in defense counsel's motions—both of which should have been granted.

It is also to be noted that an attorney's ethical obligation to zealously represent his client, Idaho Code of Professional Responsibility, Disciplinary Regulation 7–101, necessitates a thorough investigation of every potential defense available to the client. In order to properly prepare the case for trial the attorney's review of testimony given at a proceeding (preliminary hearing or men-

tal evaluation hearing) so materially related to the defendant's posture at trial is essential to the fulfillment of that duty. *That obligation should not be circumvented by a premature judicial determination regarding the relevance of the testimony at the subsequent trial. Relevance is a subjective determination, and what may be irrelevant to one attorney might appear particularly important to another. Courts have traditionally shied away from second-guessing an* attorney's *trial tactics and this is certainly not the occasion on which to plough new ground.* See State v. Larkin, *102 Idaho 231, 628 P.2d 1065 (1981).*

The judgment should be reversed.