**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43765**

| | |
|---|---|
| STATE OF IDAHO, | ) 2017 Unpublished Opinion No. 439 |
| | ) |
| Plaintiff-Respondent, | ) Filed: April 19, 2017 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| RANDY C. EILAND, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Order denying motion to continue and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Randy C. Eiland appeals from his judgment of conviction entered after a jury found him guilty of battery with intent to commit a serious felony and burglary. Eiland argues that by denying his fourth motion for a continuance, the district court deprived Eiland of the assistance of a defense expert, thereby violating his due process right to a fair trial. Eiland also argues the error was not harmless. The State asserts the district court did not abuse its discretion in denying Eiland's fourth motion for a continuance because the district court conditionally provided Eiland the funds to retain an expert for trial. Even if the district court erred, the State contends any such error was harmless. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In October 2014, an intruder broke into a family's home through a glass door at the back of the house. The mother and daughter ran up the stairs away from the intruder. The father, who

was at the top of the stairs, was sprayed with bear spray[1] by the intruder. The family retreated to the master bedroom. A struggle ensued where the intruder tried to force his way into the bedroom while spraying bear spray into the bedroom. The family tried to keep him out. The family called 911, and the intruder fled. Police responded and began canvassing the neighborhood and surrounding area.

Near the family's home was an office building. A witness testified he was on a walk around this office building when officers approached him and told him to be on the lookout for a man in a black and red coat. The officers also informed the witness that the man may be suffering the effects of bear spray. This witness testified he entered his office building and noticed a man matching the officers' description. The witness reported the sighting.

Officers arrived and observed Eiland, who matched the description of the intruder, sitting on the curb outside the office building. The officers arrested Eiland. One officer testified she could smell bear spray on Eiland and his eyes were red. Officers also discovered an envelope, which smelled of bear spray, and two tins of chewing tobacco in Eiland's pocket. The envelope had several stains on it, the color of which was consistent with the staining left on the family's bedroom door by the bear spray. Officers also found a pair of gloves on Eiland that smelled strongly of bear spray. Police discovered that before the home invasion, Eiland purchased the same brand of bear spray used in the attack, zip ties, and a tin of chewing tobacco. At trial, the State's expert witness opined that glass shards from the family's back door could share a common source with the glass shards found in Eiland's clothing.

The State charged Eiland with battery with intent to commit a serious felony, Idaho Code §§ 18-903, -911; burglary, I.C. § 18-1401; and being a persistent violator, I.C. § 19-2514. Eiland pleaded not guilty and the district court set the trial for April 13, 2015.

In February 2015, Eiland filed a motion to dismiss his appointed counsel and to represent himself with standby counsel. After a hearing, the district court granted the motion. Eiland then requested funds for investigative services. The district court authorized forty billable hours for investigative services. At the hearing for funds for investigative services, Eiland waived his right to a speedy trial and made his first request to continue the trial because he needed time to prepare. The district court granted Eiland's request and set trial for July 13, 2015.

---

[1]  Bear spray is similar to pepper spray.

In April 2015, Eiland filed a motion for funds to hire a forensic expert and a motion requesting funds for phone services. Following the hearing on Eiland's motion for funds, the district court granted a reasonable amount of funds for a forensic expert "[u]pon a showing that [Eiland's] requested expert, William Schneck from Microvision Northwest, is available to testify the week of trial--June 8 through June 12, 2015--and is willing and able to perform forensic services for the defense in this case . . . ." The district court also authorized $50 to purchase minutes of phone time, allowing Eiland to call witnesses and to prepare for trial.

The district court moved the trial date from July 13, 2015, to June 8, 2015, explaining other cases had priority settings for July and Eiland's case needed to be resolved. Eiland then filed a second request to continue the trial, asserting he did not have adequate time to prepare a defense. The district court granted the motion and set the trial for August 10, 2015. The district court also authorized funding for an additional forty hours of investigation.

After the second trial continuance, Eiland filed a motion requesting funding to have the investigator present when evidence was sent to the forensic expert. Eiland also requested funds to hire Dr. Daniel Reisberg, an expert on co-witness contamination. On June 16, 2015, the district court ordered the investigator present when the evidence was sent to the forensic expert. As to the request for funding for Dr. Reisberg, Eiland provided Dr. Reisberg's curriculum vitae and an email dated June 1, 2015, outlining his hourly rate. The district court ordered:

> Upon a showing that the defendant's requested expert, Dr. Daniel Reisberg from Reed College in Portland, Oregon, is available to testify the week of trial-- August 10 through August 14, 2015--and is willing and able to testify for the defense in this case, the Court will authorize a reasonable amount of funds to allow Mr. Eiland to hire Dr. Reisberg as a defense expert in this matter.

On July 6, 2015, Eiland filed his third request to continue trial. At the hearing on this motion, Eiland stated he needed more time because although he was working with standby counsel, he was "not getting the stuff done that I am requesting to get done in a timely manner." The district court continued trial until September 14, 2015, "in order to allow Mr. Eiland additional time to have evidence analyzed by William Schneck and to interview witnesses." In granting the motion, the district court stated: "Absent extraordinary circumstances the court will not entertain any further motions by Mr. Eiland to continue this trial."

On August 7, 2015, Eiland moved for funds for a psychologist, for investigative services, and for the services of William Schneck. Eiland also moved to obtain a cell phone for forensic analysis and filed two motions in limine. Eiland noticed these motions for hearing on

3

September 11, 2015, three days before the trial was set to begin. On August 10, 2015, Eiland filed a motion to continue the trial a fourth time on the grounds that several motions were scheduled for hearing three days before trial. Eiland requested a two-month continuance "to allow for hearings and for ongoing investigation and forensic analysis results that are outstanding." The State objected to the continuance.

The pretrial hearing was held on August 21, 2015. The pretrial hearing was conducted by a different judge than the one who would preside over the trial. Eiland explained he still had expert witness testimony outstanding, needed funds for an investigator to interview witnesses, and needed funds on his phone account because he had exhausted the amount previously granted by the court. The district court declined to rule on any issues outlined in Eiland's motion that were scheduled to be heard at the September 11, 2015, hearing. The district court stated:

> [T]oday I'm not dealing with any of those--those logistical motions. I'm just simply here to decide what the status of this case, whether it's been resolved or not. It sounds like it hasn't been resolved. It sounds like it needs to go to trial. Whether it goes to trial on the 14th or not will be determined, I guess, on that [hearing] on the 11th.

At the hearing on September 11, 2015, the district court first addressed Eiland's motion to continue. Eiland stated that as of August 15, 2015, he no longer had any money to call his expert witnesses "in order to get their statement as to what [Eiland] had asked them to do." Standby counsel explained that Schneck sent his report to Eiland, but Dr. Reisberg "won't do anything until he talks to Mr. Eiland in person. And he's not been able to do so because [Eiland] doesn't have any money on his books to talk to" Dr. Reisberg. The State argued there were four previous trial settings in the case (April, June, July, and August) and asserted, "[w]e've done everything that we possibly could to support [Eiland] being able to go to trial. At this point we are prejudiced." The district court denied the motion to continue, explaining:

> I have continued this case four times. I think I made abundantly clear the last time that I wouldn't continue it again without an extraordinary reason. And tried to make--fashion orders to make funds available to Mr. Eiland using county and-- and people to assist him to the best of the Court's ability, and I continued it several times so that he could do the proper preparation that he wanted to do. But at this time, we're ready to go to trial.

Eiland objected, arguing:

> [T]he last two times the Court has extended the extension of time, [it] had never asked the defendant at [sic] once if his expert witness would be ready to testify on the date that the Court has set for the trial. So, the defendant strongly objects to it

4

because the Court already spent the money on the expert witnesses. There's no saying that the expert witnesses can show for court to testify on defendant's behalf.

The district court responded: "you certainly had ample notice of the time and make--I haven't received any indication from any expert witness that they--of their availability or nonavailability." The district court then denied Eiland's remaining motions. The district court explained it had issued an order conditionally authorizing funds for Eiland to obtain Dr. Reisberg upon Eiland showing the court that Dr. Reisberg was available and willing to testify. Because Eiland did not show the court that Dr. Reisberg was available and willing to testify, the district court concluded Eiland failed to retain Dr. Reisberg as an expert witness. The district court explained it "never received anything indicating [Dr. Reisberg] was willing and able to testify, available, that he had any information he could provide, and so the Court didn't do anything further to authorize his payment or get him as a defense expert."

The case proceeded to trial. The jury found Eiland guilty of battery with intent to commit a serious felony and burglary. After a court trial, the district court found Eiland to be a persistent violator. The district court imposed concurrent life sentences, with twenty years determinate. Eiland timely appeals.

## II.

### STANDARD OF REVIEW

The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Generally, it has been held that unless an appellant shows that his or her substantial rights have been prejudiced by reason of a denial of his or her motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995).

# III.

## ANALYSIS

Eiland argues that the district court deprived him the expert assistance of Dr. Reisberg, thereby violating Eiland's due process right to a fair trial when it denied Eiland's fourth motion to continue trial. Eiland's argument on appeal rests on the assumption that by conditionally authorizing funds to be used for Dr. Reisberg, the district court determined that Dr. Reisberg was necessary for a fair trial. The State asserts Eiland's due process rights were not violated because it was not the district court that prevented Eiland from utilizing the assistance of Dr. Reisberg, but rather Eiland's lack of diligence in securing the expert.

It is unclear whether Eiland contends it was the state or federal constitution that was violated. Therefore, the Court will rely on judicial interpretation of the federal Fourth Amendment in its analysis of Eiland's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999). The constitution does not require a state to provide expert assistance merely because a defendant requests it. *State v. Olin*, 103 Idaho 391, 394, 648 P.2d 203, 206 (1982). Rather, the denial of access to the basic tools of an adequate defense impinges on the defendant's due process right to a fair trial. *Id.* "[A] criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985). "Before authorizing the expenditure of public funds for a particular purpose in an indigent's defense, the trial court must determine whether the funds are necessary in the interest of justice." *State v. Dunlap*, 155 Idaho 345, 382, 313 P.3d 1, 38 (2013) (quoting *State v. Lovelace*, 140 Idaho 53, 65, 90 P.3d 278, 290 (2003)). The *Dunlap* Court also stated: "A defendant's request for expert or investigative services should be reviewed in light of all circumstances and be measured against the standard of 'fundamental fairness' embodied in the due process clause." *Dunlap*, at 381-82, 313 P.3d at 37-38 (quoting *Lovelace*, 140 Idaho at 65, 90 P.3d at 290). Such a review necessarily involves the exercise of the sound discretion of the trial court, and a denial of a request for investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case. *Olin*, 103 Idaho at 395, 648 P.2d at 207. Thus, by authorizing an expenditure of funds, a district court determines whether the opportunity to consult with and, if appropriate, to hire an expert witness is necessary for a fair

6

trial. In providing funds, a district court does not determine, as Eiland suggests, that the subsequent retention of any particular expert is necessary for a fair trial.

In this case, Eiland has failed to demonstrate that his right to a fair trial was violated by the district court denying his fourth motion for a continuance. The record belies Eiland's assertions because the district court conditionally authorized funds for Eiland to use to retain Dr. Reisberg. In order to use the funds to retain the expert, Eiland had to show the expert was available to testify at trial and was willing to testify for the defense. Eiland never provided evidence to the district court showing that the expert was available and willing to testify at trial.

At the September 11, 2015, hearing, the district court explained the reason the expert had not been retained was not because the district court refused to provide funds, but instead because Eiland failed to follow through and show the court that the expert was available and willing to testify at trial. Eiland asserted he was unable to determine the expert's availability and willingness to testify because he exhausted the funds for phone calls in August 2015. However, Eiland had approximately two months between June 16, the date the district court conditionally granted funding for Dr. Reisberg, and August 15, the date Eiland claims he no longer had funds for telephone calls. Here, the district court provided funding for Eiland to contact expert witnesses for trial and provided conditional funding for Dr. Reisberg. Eiland did not demonstrate he was unable to contact Dr. Reisberg or determine Dr. Reisberg's availability and willingness to testify during those two months. Under these circumstances, the district court did not deny Eiland access to the basic tools of an adequate defense and, consequently, did not violate Eiland's due process rights.

Moreover, the district court noted that the case had been ongoing for over a year and that Eiland was granted three previous continuances. The district court found Eiland's fourth motion for a continuance was simply a delay tactic as Eiland had ample notice of the date of trial. The district court also considered the State's argument that it would be prejudiced by the delay because witnesses had already been subpoenaed for trial and an expert witness had been retained.

It was within the trial court's discretion to determine that two months was a sufficient amount of time for Eiland to contact Dr. Reisberg and determine whether he was available and willing to testify. It was also within the court's discretion to determine that Eiland's failure to secure the expert within the two-month time frame was not a compelling reason to continue the case. The trial court reached its decision by an exercise of reason. As the district court provided

7

Eiland access to the basic tools of an adequate defense, Eiland has not met his burden to establish that his substantial rights were prejudiced by the denial of his fourth motion to continue. Thus, the district court did not abuse its discretion. Given this, we need not address Eiland's argument that any error was not harmless.

## IV.

## CONCLUSION

Eiland has failed to demonstrate his substantial rights were prejudiced by the district court's denial of his fourth motion to continue trial because Eiland was not deprived of the use of Dr. Reisberg. Therefore, because Eiland failed to demonstrate his substantial rights were prejudiced, we conclude the district court did not abuse its discretion in denying Eiland's fourth motion to continue. The district court's judgment of conviction is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.